No. 51,581

## In the Matter of the Estate of Sam Saroff, Deceased.

(625 P.2d 458)

Opinion filed March 25, 1981.

*Craig Kreiser,* of the Department of Revenue, argued the cause and *Alan F. Alderson* and *John P. Quinlan,* of the Department of Revenue, of Topeka, were with him on the brief for appellant.

*Charles D. Green,* of Arthur, Green, Arthur & Conderman, of Manhattan, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: The Department of Revenue appeals from a Riley County District Court judgment granting appellees' petition for

abatement of additional inheritance taxes assessed by the director of taxation against the estate of Sam Saroff, deceased. The case was transferred from the Court of Appeals to the Supreme Court pursuant to K.S.A. 1980 Supp. 20-3018(c).

The State Board of Tax Appeals heard the petition for abatement filed by the co-executors of the estate and sustained the supplemental order of the director of taxation which assessed additional inheritance taxes in excess of fifteen thousand dollars against the estate. On appeal to the district court, the order of the Board of Tax Appeals was reversed and the petition for abatement of the additional taxes granted.

The stipulated facts were:

"1. Sam Saroff, a resident of Riley County, Kansas, and a citizen of the United States, died testate at Houston, Texas, on December 27, 1968; the decedent being seventy (70) years of age at the time of death.

"2. The last Will and Testament of Sam Saroff, deceased, dated April 2, 1968, and the first codicil thereto, dated April 18, 1968, were admitted to probate in the Probate Court of Riley County, Kansas, Sam Saroff Estate, Case No. 5254.

"3. That the petitioners were duly appointed co-executors of the will of Sam Saroff, deceased, on March 6, 1969, and have been and are still acting in such capacity.

"4. That by reason of the death of Sam Saroff, the following persons become entitled to a portion of his estate under the laws of the State of Kansas: Florence Saroff, his wife; Stephen David Saroff, his son; Milton Lincoff; Miriam Lincoff; Michael Mendeloff; and Barbara Mendeloff.

"5. That on July 9, 1957, Sam Saroff executed a trust agreement under the terms of which certain assets were assigned to said trust; that the assets consisted of shares of common stock of two (2) closely held corporations: 570 shares, common stock in Manhattan Ice and Cold Storage Company, Inc., a Kansas corporation, valued at $482,591.71 and 40 shares of common stock in Sam Saroff and Company, Inc., valued at $63,943.28; that said valuations reflect the fair market value of said assets as of the date of death of said decedent.

"6. That the trust agreement executed by Sam Saroff, as settlor, named himself as trustee; that the trust instrument granted the trustee broad powers in relation to the administration of the trust estate; that by the terms of the trust agreement, Stephen David Saroff, was to be the beneficiary of said trust.

"7. That at the time of the execution of the trust agreement, Sam Saroff, the decedent, was fifty-nine (59) years of age and Stephen David Saroff was nine (9) years of age.

"8. That Sam Saroff served as trustee for said trust during his lifetime and was serving in that capacity at the time of his death; that no portion of the principal and income realized from said principal were distributed to Stephen David Saroff, beneficiary, during the lifetime of the decedent, notwithstanding the authority granted in Article II, (a) and (b) so to do.

"9. That on July 19, 1973, the Director of Taxation by Supplemental Order assessed additional inheritance tax in the amount of $13,730.62. On August 25,

1975, the additional inheritance tax, plus accrued interest, was paid by the decedent's estate in the amount of $15,460.73, subsequent to which the estate filed a petition for abatement; a formal hearing on this matter was held before F. Kent Kalb, Acting Director of Taxation on November 20, 1975, and on March 19, 1976, C. David Newbery, Director of Taxation, denied the petition for abatement of such inheritance tax and interest; and that subsequent to the entry of the order of the Director of Taxation, the petitioners perfected their appeal as authorized by law."

On March 2, 1977, the Board of Tax Appeals for the State of Kansas ordered that the appeal from the decision of the Director of Taxation be denied and it further ordered that the additional tax due be paid.

On March 16, 1977, Charles D. Green and Jack Goldstein, co-executors of the estate of Sam Saroff, appealed the Board's order to the district court of Riley County. On September 26, 1979, the district court ordered that the order of the Director of Taxation should be set aside and that the Director of Taxation remit to the taxpayers the inheritance tax improperly assessed.

The Kansas Department of Revenue has appealed the district court's ruling. The issue to be decided, according to appellant, is whether, at the death of Sam Saroff, there was a passing of an interest in the trust "to the beneficiary of that trust so as to subject the principal of the trust to Kansas inheritance tax as a transfer intended to take effect in possession or enjoyment after the decedent's death." No assertion is made that the gift or transfer in trust was in contemplation of death.

The trust agreement executed by Sam Saroff granted the trustee broad powers of discretion in the management of the assets in the trust estate similar to many now found in the Uniform Trustees' Powers Act, K.S.A. 58-1201 *et seq.*, and amendments. The dispositive provisions of the trust provide:

"The income and principal shall be distributed in the following manner:

"a. *No portion of the income shall be expended to pay any obligation of the parents of the beneficiary for their support, maintenance or otherwise.* Subject to such limitation, the Trustee shall pay to the beneficiary or expend for his benefit such portion of the income as may be necessary, in his discretion, to provide for his comfort and welfare.

"b. It is further understood and agreed that at any time, in the absolute discretion of the Trustee, the net income is insufficient for the comfort and welfare of the beneficiary, the Trustee may make payments from the principal of the trust to such beneficiary from the Trust Estate being held for his use hereunder, or may expend the same for his benefit.

"c. *The Trust created herein for the use and benefit of the beneficiary thereof*

*shall cease and terminate as to the beneficiary when he shall become 30 years of age, at which time he shall be entitled to receive distribution of all the principal of the Trust held for his benefit, together with any accumulated income for his account. In case of the death of the beneficiary prior to the time he attains the age of 30 years, then the principal and accumulated income held for his account shall be held in trust for the heirs of his body, if any, and this trust as to such Trust Estate shall continue until a date 20 years after the death of such beneficiary.*"
(Emphasis added.)

It is apparent from the quoted language that if the beneficiary had died without heirs of his body prior to the death of his father, the trust property would have reverted to Mr. Saroff and been taxable in his estate. Appellant takes the position in this court that this possibility of reversion precludes the grant in trust from being a completed gift and is sufficient to bring the trust property into the estate for inheritance tax purposes. At the trial level the appellant based its arguments upon the broad powers of management set forth in the agreement rather than the effect of the possible reversionary interest. Appellees take the position that the court must look to the intent of the testator as disclosed by the trust agreement and the factual situation existing at the time of its execution to determine if the gift was intended to take effect in possession or enjoyment after the death of Mr. Saroff. The trial court found no intention of the settlor to retain such an interest or control that the gift of the property would not take effect in possession or enjoyment until after the death of the settlor. Appellees do not answer the arguments made by appellant but dwell upon the intent of Mr. Saroff as they interpret it from the trust agreement.

At the time of the death of Sam Saroff, K.S.A. 79-1501 provided in part:

"All property . . . and any interest therein, within the jurisdiction of this state, . . . which shall pass . . . by deed, grant or gift made in contemplation of death, or made or intended to take effect in possession or enjoyment after the death of the grantor, to any person, absolutely or in trust shall be taxed as herein provided . . . . ."

The words "made or intended to take effect in possession or enjoyment at or after the death of the grantor," or words of similar import, are widely used in estate and inheritance tax laws including early versions of the federal estate tax statutes. Surprisingly, there has been a dearth of litigation in Kansas as to the proper interpretation of the statute. Our research reveals only one

Kansas case in which the possession and enjoyment language of the statute has been considered. In *Russell v. Cogswell,* 151 Kan. 14, 98 P.2d 179 (1940), supplemental opinion, 151 Kan. 793, 101 P.2d 36 (1940), this court held the corpus of an irrevocable trust, wherein the settlor fully parted with legal title to the trust property, was taxable upon the settlor's death due to a reservation of the income from the property during the settlor's lifetime. The court recognized the distinction between an estate tax and an inheritance tax as follows:

"An 'estate tax' such as the federal law imposes is a tax upon the right to transmit or *transfer* property at death. It is levied upon the body of the estate before distribution. It does not at all involve, primarily, the right of the distributee to *receive* the property. An 'inheritance tax,' on the other hand, is not a tax upon the right to transmit or transfer, but is a *succession* tax, a tax upon the right of the distributee to *receive* the property." (Citations omitted.) (Emphasis in original.) 151 Kan. at 19.

Because of the fact that grantor had retained a life estate in the trust income it was held that although the gift by the grantor was complete, the right to *receive* did not accrue to the beneficiary until the death of the grantor. In the instant case, Mr. Saroff did not retain any right to the income during his lifetime and although he had broad powers of management under the terms of the trust agreement, he had no authority to invade the corpus or utilize the income for his own benefit or for the benefit of any one other than his son. The sole question before the court is whether the possibility that the principal beneficiary, Stephen David Saroff, might die without issue prior to the death of his father created such a reversionary interest in the trust property that it should be taxed in Mr. Saroff's estate. The right to receive the property by Stephen David was in no way dependent upon his father's death but was solely dependent upon Stephen David living to be 30 years of age regardless of whether his father was dead or alive at such time.

The trial court in reaching its decision did not consider the effect of the possibility that the trust property might revert to the settlor and the thrust of the opinion is to the effect that the reservation of broad powers of management did not bring the property within the purview of the statute. The asserted rule that a possibility of a reversion to or a remainder interest in the grantor is sufficient to require taxation of the property in the grantor's estate has been stated many times in the case law, although most

of the cases which state the rule broadly have factual situations where possession or enjoyment is tied to the actual date of death. While it appears to be essential for the grantor of a trust to completely divest himself of all legal title in the trust property to avoid having the trust property included in his estate for federal estate tax purposes as well as for state inheritance tax purposes under statutes which have language similar to ours, the triggering event in most of the cases is the death of the grantor.

The general rule has been stated to be that the retention of any possibility of reversion, no matter how remote or unlikely, would result in the property subject to the reversion being included in the grantor's estate.

The general rule with respect to such transfers is discussed in 85 C.J.S., Taxation § 1147(3), pp. 927-930, where we find:

"Transfers made or intended to take effect in possession or enjoyment at or after the death of the transferor are subject to taxation under inheritance, succession, or estate tax statutes so providing. The thing taxed is the transfer of the interest or property withheld from possession and enjoyment until the transferor's death.

. . . . .

"A transfer intended to take effect in possession or enjoyment at or after death is a disposition in which the donor retains the economic interest or enjoyment of the property during his life, and includes situations where the ownership of the property had passed from the decedent during his life.

. . . . .

"The tax applies to transfers wherein the death of the transferor is a factor in the devolution of the use or enjoyment of the property. It is intended to reach a shifting of the enjoyment of property, that is the economic benefits thereof or economic interest therein, which bears a distinct and necessary relation to the death of the settlor. The full fruition of the transfer by the passing of its use and enjoyment to the grantee or donee on the death of the grantor or donor is the event which makes the transaction subject to the tax. The death of the deceased former owner is the generating source of the succession; the taxable succession does not occur until his death and occurs by reason of his death.

"Generally, if the death of the transferor makes no difference in the rights of the parties, the transfer is not taxable, under such a statute."

The general rule as to inter vivos trusts is stated at pp. 937-938 as follows:

"A tax assessed with respect to property transferred in trust prior to death should be imposed when the ultimate, complete possession and enjoyment and the final vesting of title of the principal in the beneficiaries are made contingent on, or take effect at or after, the death of the donor. In order to avoid the tax the settlor must be left with no legal title to the property, no possible reversionary interest in it, or no right to possess or enjoy the property then or thereafter. *A transfer of property as a gift by means of a trust inter vivos is not taxable as a*

*succession, however, in the absence of evidence showing an intention by the settlor to accomplish a testamentary disposition of his property taking effect at or after his death, and usually there is no taxable transfer in trust where the beneficiaries are immediately given the income from the trust property and are to come into full possession and enjoyment on the happening of some event not connected with, or contingent on, the death of the grantor. It is the intention of the settlor as expressed in the language of the trust instrument that controls."* (Emphasis added.)

*Glosser Trust,* 355 Pa. 210, 49 A.2d 401 (1946), is an example of the cases setting forth the general rule. In *Glosser* grantors created an irrevocable trust of $125,000 for the benefit of their three sons. The trust was to remain in full force and effect for fifteen years, at which time it was to be distributed to the beneficiaries, but could be terminated at any time upon the mutual and concurrent decision of the trustees and of the beneficiaries. The grantors appointed themselves trustees with broad powers of management. No income from the trust was ever distributed to the beneficiaries. At the time of Saul Glosser's death the trust assets were worth $204,044.50.

In holding that the trust was not taxable under Pennsylvania inheritance tax laws, the Supreme Court of Pennsylvania found that the possession and enjoyment of the trust property by the beneficiaries was in no way contingent upon or connected with the death of the donor. However, the court stated the rule to be:

"[I]f there is no such reservation, [i.e. reservation of the income for life] if the donor has not retained any power of revocation or amendment whereby he may reassert dominion over the property, *if he has divested himself absolutely of all title to the property at the time of the execution of the trust instrument, the transfer is a perfected gift inter vivos and, therefore, is not subject to the tax.* (Citations omitted.) The criterion is not whether the beneficiaries are to acquire actual possession or enjoyment at or after the death of the donor but whether the latter has irrevocably parted with all his interest, title, possession and enjoyment in his lifetime." (Emphasis added.) *Glosser Trust,* 355 Pa. at 215.

Numerous older cases state the rule in broad language and a few have followed it in cases where the death of the grantor had no connection with the possession or enjoyment of the gift or transfer in trust, but the majority of the cases turn upon some event which is dependent upon the death of the grantor. In the early case of *Comm'r v. Estate of Church,* 335 U.S. 632, 93 L.Ed. 288, 69 S.Ct. 322 (1949), the settlor created an irrevocable trust in 1924 in which he reserved the right to receive the income during his lifetime. The trust was to continue during his lifetime and

upon his death the corpus was to be distributed to his surviving issue and, if none, to his brothers and sisters and to the children of any deceased brother and sister. As in the case at bar, no contingency was made for distribution if the settlor died without children and without any of his brothers or sisters, or their children surviving him. The court stated the rule as:

"A trust transaction cannot be held to alienate all of a settlor's 'possession or enjoyment' under § 811(c) unless it effects a bona fide transfer in which the settlor, absolutely, unequivocally, irrevocably, and without possible reservations, parts with all of his title and all of his possession and all of his enjoyment of the transferred property. After such a transfer has been made, the settlor must be left with no present legal title in the property, no possible reversionary interest in that title, and no right to possess or to enjoy the property then or thereafter." Syl. ¶ 2.

After stating this broad rule, the court held that the reservation of the right to the income was sufficient to bring the trust property within the rule. The decision was not based upon the possibility that the property might revert to the grantor or his estate. See also *Fidelity Co. v. Rothensies,* 324 U.S. 108, 89 L.Ed. 782, 65 S.Ct. 508 (1945) (the reservation of a contingent power of appointment); *Commissioner v. Estate of Field,* 324 U.S. 113, 89 L.Ed. 786, 65 S.Ct. 511 (1945) (reservation of income for life plus possibility of reverter specifically included in the trust instrument).

An extreme case which did result in the value of the trust property being included in the grantor's estate based solely upon a remote possibility of reverter is *Commissioner v. Bank of California,* 155 F.2d 1 (9th Cir. 1946). The settlor created an irrevocable trust of certain properties reserving the income for herself for life. Upon her death the fund was to be divided between her two children. If either of her children were to die in her lifetime, their interest in the trust would go to the child's issue or if no issue existed, to the surviving child. At the time of her death her children were both alive and she had five grandchildren and one great-grandchild.

In holding that the trust principal was includable in the settlor's gross estate, the circuit court of appeals noted that the settlor had a reversionary interest in the trust fund. Acknowledging that settlor would have had to survive both her children, five grandchildren and one great-grandchild before her reversionary interest could be realized, the circuit court held that:

"[T]he more or less remote possibility of a reversion to the settlor upon the prior death of holders of the remainder interest made the transfer in trust not a complete divestment of the remainder interest." p. 2.

It should be noted however that the grantor had also retained the right to receive the income during her lifetime and the decision also relied upon the federal regulations in effect at the time.

On the other hand, Mr. Justice Holmes in *Shukert v. Allen*, 273 U.S. 545, 71 L.Ed. 764, 47 S.Ct. 461 (1927), a case remarkably similar to the one now before this court, found that property placed in trust by a fifty-six-year-old grantor for the benefit of his children was not taxable in the grantor's estate. The trust was established in 1921 and the grantor died the same year. The income from the trust was to be accumulated and the trust was to extend for a period of thirty years. There was no ultimate gift over in the event of the death of all possible beneficiaries prior to that of the donor and he had a theoretical possibility of reverter as in the present case. The court stated:

"The transfer was immediate and out and out, leaving no interest remaining in the testator. The trust in its terms has no reference to his death but is the same and unaffected whether he lives or dies. . . . [T]he interest of the children respectively was vested as soon as the instrument was executed, even though it might have been divested as to any one of them in favor of his issue if any, or of the surviving beneficiaries, if he died before the termination of the trust. . . . It seems plain . . . that the testator was not acting in contemplation of death as a motive for his act, or otherwise, except in the sense that he was creating a fund intended to secure his children from want in their old age . . . ." p. 547.

In analyzing the various cases involving the federal estate tax, it is necessary to consider the federal statutes and regulations as they existed at the times involved. Even the United States Congress and the Internal Revenue Service have recognized that some of the decisions and rulings interpreting the "made or intended to take effect in possession or enjoyment at or after the death of the grantor" were unfair in their applications of the so-called general rule and have taken steps to alleviate the problems to some extent. See Bogert, Trusts and Trustees § 273.15 (2nd ed. rev. 1977). Kansas, in 1978, adopted legislation to bring our inheritance tax statutes in line with current federal rules and regulations. K.S.A. 1980 Supp. 79-1537 *et seq.*

In reaching our decision in this case, we must also keep in mind the fundamental difference between an estate tax and an inheritance tax as pointed out earlier in *Russell v. Cogswell*, 151

Kan. 14. Our inheritance tax is based upon the right of the beneficiary to receive the property. In the instant case, the right of Stephen David Saroff or his issue to receive the trust property was in no way contingent upon the death of Sam Saroff. He made a complete, out and out conveyance of the property to the trust for a period of years with the remainder over to his son or his issue and that transfer of title to the property bore absolutely no relationship to the time of the grantor's death. Upon reaching thirty years of age, the property would become Stephen's absolutely even if his father were to live to be a hundred years old. When Sam Saroff established the trust, he parted with the beneficial interest in the property and retained nothing more than broad powers of management which would also enure to any successor trustee. He could not revoke the trust and regain possession and personal control of the assets; he could not change the trust and leave the property to other beneficiaries; he could not utilize trust income or corpus for anyone other than the trust beneficiary and he had no power to deprive his son of ultimately receiving the property if he lived to be thirty years old. Considering the respective ages of Mr. Saroff and his son, it is unlikely that he even gave consideration to the possibility that the property might revert to him. Certainly there is nothing in the record to indicate that he intended the property to remain his until after his death. Unless the possession or enjoyment of the property was dependent upon or certain to be delayed until at or after the death of the grantor, it cannot be said under the factual situation of this case that the grantor retained such an interest as would require inclusion of the property in his estate. Neither contingency exists and the fact that Mr. Saroff did die prior to the expiration of the trust does not alter the fact that his death did not affect the trust in any way (except for the necessity of a successor trustee) and if he had continued to live it would not have been affected. The right of Stephen David Saroff, or the heirs of his body, to receive the trust property was totally divorced from the event of the death of his father.

As stated in 85 C.J.S., Taxation § 1147(3), where the right to receive the property is not dependent or contingent upon the death of the grantor, "It is the intention of the settlor as expressed in the language of the trust instrument that controls." The trial court found no intent which would bring the property into the estate and we concur in its decision.

The judgment is affirmed.