ORLANDO S. TANNER ET AL.

v.

DAVID C. HASTINGS.

</div>

1. AGENCY—GENERAL AUTHORITY.—Appellee being desirous, by way of protecting his own interest, of procuring the dismissal of certain attachment proceedings, made a proposition for settlement, by which, if accepted, he was to pay $1,000, and authorized Anderson, one of the appellants, if the proposition should be accepted, to pay the $1,000, adding that, "Whatever arrangement he (Anderson) made, he (appellee) would stand to." Held, that this constituted Anderson the general agent of appellee in respect to the transaction, and gave him authority to raise the money, by executing a note therefor as agent of appellee.

Tanner et al. v. Hastings.

2. APPELLEE LIABLE TO ACCOMMODATION SIGNERS OF SUCH NOTE. — The execution of the note being within the scope of the authority given by appellee, he is liable thereon to parties whom his agent procured to sign the note, they having knowledge of the authority given and acting in good faith as accommodation indorsers for appellee, and having been obliged to pay the note at maturity. .

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Mr. E. F. ALLEN, for appellants; that if a principal permits his agent to advertise his name as agent generally, without noting a limitation of his authority, and the agent acts outside of his authority, the principal is bound, unless the party had notice of the limitation, cited St. L. & M. Packet Co. v. Parker, 59 Ill. 23.

Third parties are only required to ascertain the agent's authority to act in the premises: Mason v. Bauman, 62 Ill. 76.

As to ratification: Searing v. Butler, 69 Ill. 575; Morris v. Tillson, 81 Ill. 607.

Messrs. TULEY, STILES & LEWIS, for appellee; that it was incumbent upon appellants to ascertain the authority of the agent to act for appellee, and they dealt with him as such agent at their peril, cited Baxter v. Lamont, 60 Ill. 237; Davidson v. Porter, 57 Ill. 300; Peabody v. Hoard, 46 Ill. 242; Smith's Mercantile Law, 124; Story on Agency, § 140; Wharton on Agency, § 459.

MURPHY, P. J.  It appears that in the month of October, 1875, the appellee, being a resident of the State of Iowa, made a trade with one Sidney Frink, of McHenry county, Illinois, by the terms of which trade appellee was to convey to said Frink two hundred acres of land, situated in the State of Iowa, of the agreed value of twenty-five hundred dollars, in consideration of which Frink was to turn out and transfer to appellee a certain dairy stock and some farming utensils then in his possession, on the farm occupied by him in McHenry county, of the agreed value of fifteen hundred dollars, and to give his

Tanner et al. v. Hastings.

promissory note for one thousand dollars, secured by a mortgage upon said real estate so conveyed to him by the appellee. It appears that after said contract for trade had been executed, and appellee came into possession of the dairy stock and farming utensils, he sold and transfered them to one J. M. Anderson, of the same place, for the sum of thirteen hundred dollars, taking the note of said J. M. Anderson and his father David Anderson, in payment therefor. It also appears that at this time Frink was in embarrassed and failing circumstances, and that shortly after the transfer of the dairy stock to J. M. Anderson, the creditors of Frink sued out attachments against his property, and levied on this dairy stock, which Anderson replevied. At this stage of the proceeding appellee again appears upon the field, and for obvious reasons interested himself to effect some disposition of the attachment which had been levied on the dairy stock, the title to which he had guaranteed to J. M. Anderson, and which as vendor he would be compelled to make good if by the attachment proceedings it should be swept away from his vendee. Whilst it is true that if the same rule of law which would compel appellee to respond to his vendee in case the attachment proceedings should hold the dairy stock, appellee's vendor, Frink, would be liable to appellee in the same event, but Frink being as he was in failing circumstances, being at the time in bankruptcy, or about to file his voluntary petition in bankruptcy, made appellee's recourse to him in case of the failure of his title of no avail, and pointed to the course adopted as the only safe solution of the problem, which as we have seen, was to so arrange with Frink's creditors as to have the attachment suit dismissed.

With this object in view, it appears that in December, 1875, appellee called upon Frink to have this attachment suit dismissed, and with a view to enable Frink to do so, offered to take back the Iowa land, return to him, Frink, his note and mortgage for one thousand dollars, and give him one thousand dollars in cash, with which, it was alleged, he could effect a compromise with his creditors, and thus secure a dismissal of the attachment suit, and relieve the dairy stock from further complications. This offer, Frink, at the time, refused to accept.

This offer was made in the office of Mr. Ira R. Curtis, at Marengo, Ill, in the presence of said Curtis and J. M. Anderson, appellee being at the time on his route East, and being about to go on, on his journey, in the presence and hearing of all these parties, informed Frink and his attorney, Curtis, that at any time thereafter he, Frink, chose to accept that proposition he would authorize J. M. Anderson to take the land for him, and pay him the $1,000, and that if they concluded to accept the offer, "whatever arrangement he (Anderson) made, he (appellee) would stand to." These facts, substantially, are established by the concurrent testimony of Curtis, Frink, and J. M. Anderson, and not really denied by the appellee, he disputing the scope and meaning of the words thus imputed to him by the appellants. It appears that afterwards, a short time, and after the appellee had gone East, Frink accepted the offer so made by appellee, and in pursuance of the understanding had in Curtis' office, called upon J. M. Anderson to pay the $1,000, and to deliver up to him the note and mortgage for the $1,000 so given on the Iowa land, and to say to whom the 200 acres of Iowa land should be conveyed for the use of the appellee. Anderson requested that the land be conveyed to O. S. Tanner, for the use of the appellee, as appellee was having some trouble with his wife, which made that course desirable; which Frink did, and received from J. M. Anderson his note and mortgage, which had been left with him by the appellee as his agent for such purpose. It appears that for the purpose of raising the $1,000 in cash for Frink, J. M. Anderson, as the agent of the appellee, called upon the appellants to sign an accommodation note for $1,000, due in one year, for the accommodation of the appellee, representing to the appellants at the time the object for which the money was being raised, and that he was fully authorized to raise it, and referred them to Curtis and Frink to verify his statement as to his authority from appellee. Having called upon and seen Curtis and Frink, and learned as they did what the appellee had said and done in the premises, becoming satisfied from all these circumstances that J. M. Anderson had such authority, and that in complying with such request they

Tanner et al. v. Hastings.

were conferring a favor on appellee, as an unselfish act of kindness to him, the appellants signed a promissory note, payable to J. M. Anderson, for $1,000, upon which said note the money was raised and used by J. M. Anderson, as the agent of appellee, in securing a dismissal of said attachment suit, which was duly done, and the dairy stock relieved from all embarrassment; which note, at maturity, they were compelled to pay. To recover such money so paid, this suit was brought in the Circuit Court of McHenry county, the venue of which being changed to the Circuit Court of Cook county, where a trial thereof resulted in a verdict and judgment against the appellants, who prayed an appeal to this court, and bring the record here and assign several errors, one of which is that the verdict is contrary to evidence. Another is, that the court admitted improper evidence on the part of the appellee.

It is insisted by the appellee that he never gave J. M. Anderson authority to obtain said note from the appellants. Upon that question the case turned in the court below, and is really the main question involved in this record. It is urged by the appellee that whatever agency, if any, was created by him in J. M. Anderson, was a special agency, and that under the rules of law, he who deals with a special agent is bound to know for himself that his authority is sufficient to authorize the transaction, and if not, he must be content with the consequences. We recognize the rule of law as correctly assumed by the learned counsel for the appellee, as applied to a special agent. But the question remains to be determined, whether under the facts in this case, this was a case of special or general agency within the rule above stated. The import of the authority given, as we think, was to make Anderson his general agent within the meaning of the rules. It is claimed by the appellee that he meant by what he said to Anderson—and that such is the fair import and meaning of his words—to simply authorize Anderson to pay the $1,000 himself, but not to raise the money by any other way or means. This construction of the testimony on that point, we think, is sticking in the back. What difference to the appellee can it make whether the appellants or J. M. Anderson shall advance, at his instance and request,

$1,000 for his use and benefit? We suppose that in either event the appellee would expect to pay the same; then what substance or merit is there in the claim of appellee that he did authorize Anderson to pay it, which he did, but notwithstanding, he told Frink and Curtis that whatever "arrangement" Jo made about it (this whole transaction), he would "stand to," he now insists that Anderson was without authority to raise the money as he did. But we think, when viewed in the broader light of the intention of the parties and the object of appellee, it is manifest that he intended to authorize Anderson to "arrange the matter" in such way as to get the attachment suit dismissed and the dairy stock relieved from it, and at the same time relieve himself from his liability to J. M. Anderson, in case it was not dismissed, but the property held thereby. This being the manifest object of the appellee, the inference is irresistible that he meant, and the fair import of the language employed by him to Frink, Curtis and Anderson, is that he authorized Anderson to take charge of the transaction, and do generally and according to his own discretion and judgment, just whatever might be found necessary to raise the $1,000, and thus secure a dismissal of the attachment suit; and that for the purpose of accomplishing this transaction, he was the general agent of the appellee, with authority to bind him generally in the completing of the arrangement as fully and completely as he could bind himself. In confirmation and as decisive of the question, in connection with what we have shown, is the uncontradicted testimony of J. M. Anderson that he saw the appellee the following spring some time, at Marengo, and then and there fully explained and made known to him what he had done in the premises, and how he had transacted the business, to which appellee replied it was all right, and agreed with him to fix the matter with appellants. In the light of these facts and circumstances, we cannot see how it can be doubted that he gave Anderson full authority to do all he assumed to do in the name of appellee. If then, this was a general agency and not a special one, and that as to this transaction, appellee held Anderson out to parties who innocently acted on such holding out as having full authority to close up the transaction

with general powers and discretion to complete it, then it follows that it was for that purpose a general agency, which could not be restricted as to the public by any limitation upon that authority, given privately between the principal and agent, in ignorance of which innocent parties act on the apparent authority given by such holding out, as agents by the principal; it was, therefore, error to permit the appellee to make proof of any limitation of such authority made between appellee and Anderson, and of which the appellants were ignorant at the time they signed the accommodation note. It appears that when asked by J. M. Anderson to give said note, the appellants were referred to Curtis and Frink, as knowing the fact of his authority; that before signing the same, they called upon Curtis and Frink to ascertain for themselves that Anderson had such authority. And on being assured ·by them of what they had heard, the appellees say they signed the note, and, as we have seen, paid the same, as we think, manifestly for the use, benefit, and accommodation of the appellees; therefore the verdict was against the clear weight or preponderance of the testimony, and should have been the other way; and that a new trial should have been granted; and that it was error to deny the motion for that purpose. For the errors above mentioned, the judgment of the court below is reversed, and the cause remanded for further proceedings.

<div align="right">Judgment reversed.</div>