THE WAPPLES-PLATTER GROCER COMPANY, *Appellant,* v. ROBERT KINKAID, *Appellee.*

No. 17,330.

SYLLABUS BY THE COURT.

ATTORNEY IN FACT—*Authority to Execute Notes.* The defendant, who had been a contractor, and who had purchased supplies on credit to enable him to carry on his contract, had money owing to him on the work done, and he owed several parties for supplies by whom a number of garnishment proceedings had been begun. Having removed to a distant place he executed a power of attorney authorizing his agents to "settle, negotiate and sign and release any and all indebtedness due me or due by me, . . . and to negotiate and settle with" (certain parties, naming them), adding that he gave his attorneys "full power to do everything whatsoever requisite and necessary to be done in the

premises as fully as I could if personally present." In the settlement made by the attorneys the money received for work done, being insufficient to satisfy all claims against him, was apportioned among his creditors and notes were given by the attorneys for the unpaid indebtedness; *held,* under the circumstances of the case, that the attorneys in fact had authority to execute the notes given in the settlement.

Appeal from Shawnee district court. Opinion filed December 9, 1911. Reversed.

*T. D. Humphreys,* and *Louis A. Laughlin,* for the appellant.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by The Wapples-Platter Grocer Co., the appellant, against Robert Kinkaid, the appellee, to recover on three promissory notes for $140 each, alleged to have been executed by Louis F. Davison and J. S. Kinkaid as attorneys in fact for Robert Kinkaid. In his answer Kinkaid denied that he had executed or authorized Davison or his brother, J. S. Kinkaid, as his attorneys in fact to execute the notes. At the trial it was shown that Robert Kinkaid had contracted to do some railroad work in the Indian Territory for another contractor, and while engaged in the work purchased supplies on credit from the appellant. He contracted other debts, and several garnishment proceedings were brought which tied up the money due him for his work. Before making a settlement on his Indian Territory work he secured some work in Kansas, and being unable to go to the territory to settle his business there he authorized his brother, J. S. Kinkaid, and Louis F. Davison to settle with his creditors and his debtors, including the appellant. These attorneys in fact went to the territory and made a settlement of Kinkaid's business, collecting the money that was due him and settling the claims held against him. They adjusted appellant's claim by paying sixty-five per cent of it in cash and for the balance the three

promissory notes in suit were executed, due in thirty, sixty and ninety days after the time of execution.

Upon the testimony offered at the trial by appellant, none being offered by appellee, the court gave judgment for appellee.

The question involved here is whether the action of the attorneys in fact for appellee, in settling the claims and executing the notes, was within the scope of their agency. The power of attorney executed by appellee provided, among other things, that they were appointed as "my true and lawful attorneys in fact for me and in my place and stead, and to my use to settle, negotiate and sign and release any and all indebtedness due me or due by me, and to collect and receive all moneys, notes and other securities for debts due me, and to negotiate and settle with Luttgerding Bros., Patton & Gibson, Ltd., and the Missouri, Kansas & Texas Ry., by reason of my contract with the above parties, giving unto my said attorneys full power to do everything whatsoever requisite and necessary to be done in the premises as fully as I could if personally present."

These agents were given full authority, it appears, to settle all claims in his favor and against him arising out of his railroad contract work in the territory, and to accomplish this they were authorized not only to collect money and release indebtedness to him but to negotiate and sign indebtedness due by him. Now the testimony is that the agents found that the claims against Kinkaid for supplies purchased to enable him to carry out his contract exceeded the amount that was due to him. In order to effect a settlement it was necessary to make a distribution of the cash received among appellee's creditors, and so they paid appellant its proportion of the money and signed acknowledgments and promises to pay the remaining indebtedness. Each of his creditors was given notes for the unpaid indebtedness due from him.

The power of attorney appears to authorize the sign-

ing of the notes. It is true that such authority is to be strictly construed according to the natural import of its language. If the language is plain the power is not to be either extended or restrained by implication. Every such grant of authority should, so far as is possible, give effect to the purpose of the principal who conferred it. (34 Cyc. 1405.) In answer to an argument that such writings should be strictly construed the supreme court of Illinois said:

"This may be true but it does not require that it shall be so construed as to defeat the intention of the parties. Where the intention fairly appears from the language employed that intention must control. A strained construction should never be given to defeat that intention nor to embrace in the power what was not intended by the parties." (*Hemstreet v. Burdick,* 90 Ill. 444, 450.)

(See, also, *Muth et al. v. Goddard et al.,* 28 Mont. 237, 72 Pac. 621.)

A fair interpretation of the instrument is that his agents, in making a settlement, should sign indebtedness as well as to release it. No new indebtedness was created by the execution of the notes. They only represented what was an existing indebtedness in another form. The agents were specifically authorized to settle with creditors by signing indebtedness; that is, some form of indebtedness, and one of the most common forms of acknowledging unpaid indebtedness is by a promissory note. They were given full power to do everything requisite and necessary in signing a form of indebtedness the same as the appellee could have done if personally present.

Appellee's affairs were complicated and garnishment proceedings made it impossible to collect what was due him on his contract. That money could not be obtained and disbursed until adjustment was made with all his creditors. He was unable to go there and, recognizing that obligations of indebtedness would have to be signed, that general power was included in the ap-

pointment.   In order to arrive at the intention of the appellee in conferring power on his agents the writing must be read in the light of the surrounding circumstances.   The court must keep in view the object to be accomplished and the means usually employed in carrying it out.   (1 A. & E. Encycl. of L. 999.)   In this view the execution of the notes seems to have been authorized.   (*Layet et al. v. Gano,* 17 Ohio, 466; *James v. Mrs. M. J. Lewis and Husband,* 26 La. Ann. 664; *Tanner et al. v. Hastings,* 2 Ill. App. 283; *Stothard v. Aull & Morehead,* 7 Mo. 318; *Holladay v. Daily,* 86 U. S. 606.)   The appellee had the benefits of the settlement made by his agents and, so far as it appears, he has retained those benefits and only repudiated that part of the settlement involved in the execution of the notes.

The testimony does not support the ruling of the court, and therefore its judgment is reversed and the cause remanded for a new trial.