## CIRCUIT COURT OF THE CITY OF WINCHESTER

First Union National Bank
of Virginia

v.

Adelaide H. Thomas
and Donald R. Grubbs

March 9, 1995

Case No. (Chancery) 94-141

By Judge John E. Wetsel, Jr.

This case came before the Court on the Defendant Grubbs' Motion for Summary Judgment on the question of whether an attorney-in-fact under a durable power of attorney may terminate a trust created by his principal, who is now incompetent. Upon consideration of the argument and memoranda of the parties, the Court has made the following decision to grant the motion for summary judgment.

### I. *Statement of Material Facts*

The following facts are established in the record and are not in dispute.

On August 9, 1979, Defendant, Adelaide H. Thomas, created a Trust Agreement naming the Shenandoah Valley National Bank of Winchester as Trustee. Article VIII of the trust provides that:

> this trust is revocable, and the grantor shall have the right to alter, amend, or revoke it, and can terminate it with three months written notice.

The Complainant, First Union National Bank of Virginia, is the successor in interest to First American Bank of Virginia who, in turn, was the

successor in interest to the Shenandoah Valley National Bank of Winchester, Virginia.

The Defendant Donald R. Grubbs was formerly a senior vice president of First American Bank of Virginia.

On or about October 3, 1990, Mrs. Thomas executed a durable Power of Attorney naming Defendant Donald R. Grubbs as her attorney-in-fact. This durable Power of Attorney authorized the attorney-in-fact to:

> do all such other acts, matters, and things in relation to all or any part of or interest in my property, estate, affairs, or business of any kind or description, in the State of Virginia, as I myself might or could do if acting personally. This includes power to terminate any existing Trust Agreement that I may have or to establish any Trust Agreement for me.

The Power of Attorney further states:

> This Power of Attorney shall not terminate on disability of the principal, Adelaide H. Thomas, but in such event, shall continue and be exercisable by my said attorney-in-fact on behalf of the principal notwithstanding any subsequent disability, incompetence or incapacity of the principal.

In 1990, Mrs. Thomas amended the trust so that the trust corpus would be administered as part of her testamentary estate. Mr. Grubbs was named executor under Mrs. Thomas' Will.

On February 28, 1991, the Defendant Thomas executed an Amendment to the subject Trust Agreement.

On or about April 21, 1994, Defendant Thomas, pursuant to Article VIII of the Trust, attempted to revoke the Trust. The Complainant herein refused to honor the revocation of the Trust, stating that Mrs. Thomas appeared confused.

On or about June 6, 1994, Defendant Donald R. Grubbs, acting as Defendant Thomas' attorney-in-fact, pursuant to the valid durable Power of Attorney document which had previously been honored by Complainant, notified Complainant that he was exercising his principal's right, under Article VIII of the Trust, to terminate the Trust. The Complainant refused to terminate the Trust without explanation, but filed suit seeking reformation of the trust or declaratory relief.

The Court appointed Thomas Lawson to act as guardian ad litem for Mrs. Thomas. Mr. Lawson investigated the matters presented and met with

Defendant Thomas to evaluate her capacity. His report, dated December 8, 1994, states "Mrs. Thomas suffers from dementia, which will progress to Alzheimer's Disease. Mrs. Thomas can communicate but she does not appear to understand any information provided to her or even to retain information on a short term basis."

Mr. Lawson, in a subsequent letter dated January 23, 1995, stated that he had spoken with Dr. Iden, Mrs. Thomas' personal physician, about her dementia. (See Exhibit to Defendant's Reply to Complainant's Motion for Continuance and Leave to Amend.) Dr. Iden reviewed his records and advised Mr. Lawson that his first note of dementia occurred in a recent hospital visit to Mrs. Thomas in November of 1994 and, further, that he had no other record of dementia in his files. No medical evidence was found or presented that Defendant Thomas was incompetent at the time she attempted to revoke the Trust.

The Complainant, First Union National Bank of Virginia, filed a Bill of Complaint against Adelaide H. Thomas and Donald R. Grubbs alleging *inter alia* that the Amendment to Mrs. Thomas' Trust and the validity of her Letter of Termination, dated April 21, 1994, required reformation of the Trust and/or declaratory relief with regard to its interpretation. In response to the Bill of Complaint, Defendant Grubbs filed a Demurrer and Motion to Dismiss stating that the allegations contained in the Bill of Complaint failed to state facts upon which the relief demanded could be granted because the Trust had been terminated by him pursuant to Article VIII of said trust. The issues raised in the Bill of Complaint therefore were moot. At the argument on the Demurrer and Motion to Dismiss, Complainant again asserted there was an issue as to Defendant Thomas' competence, and the Court then appointed Thomas M. Lawson to act as guardian *ad litem* for Mrs. Thomas to determine her present competence. At that time, the Court opined that in the event Mrs. Thomas was incompetent, the durable Power of Attorney, if valid, provided Defendant Grubbs the power to terminate the Trust. The guardian *ad litem* filed his report and concluded that, in fact, Mrs. Thomas was presently incompetent. Subsequently, Defendant Grubbs filed a Motion for Summary Judgment. In response, Complainant filed a Motion for Continuance and Motion for Leave to Amend asserting it wanted more information concerning the competence of Defendant Thomas at the time she executed the Power of Attorney instrument. At oral argument on Defendant Grubbs' Motion for Summary Judgment however, Complainant withdrew its motions, conceding that Defendant was competent when the durable Power of Attorney instrument

was executed. Complainant then orally raised for the first time in the proceeding the issue of whether a Trust could be revoked by an agent pursuant to a valid durable Power of Attorney. The Court ordered Complainant to file a Memorandum of Authority and Defendant Grubbs a response thereto on this newly raised issue.

## II. *Conclusions of Law*

### 1. *Summary Judgment*

Summary Judgment is appropriate if there is no material fact genuinely in dispute. Supreme Court Rule 3:18; *Carson v. LeBlanc*, 245 Va. 135, 139, 427 S.E.2d 189 (1993). In *Metro Machine Corp. v. Mizenko*, 244 Va. 78, 83, 419 S.E.2d 632 (1992) citing *Gaudet v. Exxon Corp.*, 562 F. 2d 351, 355 (5th Cir. 1977), *cert. denied*, 436 U.S. 913 (1978), the Supreme Court analyzed the character of the genuine issue of fact criterion governing the Court's disposition of a motion for summary judgment and stated:

> [T]he issue of fact must be "genuine." When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

While the Supreme Court of Virginia frowns on the short-circuiting of litigation where there are genuine issues of fact in dispute or conflicting inferences which may be drawn from uncontested facts, *see Renner v. Stafford*, 245 Va. 351, 429 S.E.2d 351 (1993) and *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277 (1993) (ruling on demurrer), there is no genuine issue of fact in dispute or conflicting inferences upon which reasonable men could differ in this case.

### 2. *The Trust Was Revoked According To Its Terms*

Mr. Grubbs revoked the Trust according to its terms. Article VIII of the Trust specifically provides that: "This Trust is revocable, and the Grantor shall have the right to alter, amend, or revoke it and can terminate it with three months' written notice." As stated in 76 Am. Jur. 2d, *Trusts*, § 92 at 124-25 (1992):

[A]bsent fraud or mistake, a trustor has the power to modify a trust only if and to the extent that such a power was reserved by the terms of the trust. However, if the method of exercising a power of modification is described in the trust instrument, the power can be asserted in only that manner . . . .

The Supreme Court of Virginia observed in *Cohn v. Central Nat'l Bank of Richmond*, 191 Va. 12, 17, 60 S.E.2d 30 (1950), that:

Restatement of Trusts, section 330, comment "i," provides: "If the settlor reserves a power to revoke the trust but does not specify any mode of revocation, the power can be exercised in any manner which sufficiently manifests the intention of the settlor to revoke the trust."

Where no procedure for termination is stated in the instrument, any reasonable method may be used. *Restatement (Second) of Trusts*, § 330, p. 139, and *The Law of Trusts* (Scott 4th ed.) vol. 4, § 330.7, p. 358.

In this case, both the Grantor individually, Mrs. Thomas, and Defendant Grubbs, as attorney-in-fact for Defendant Thomas, properly revoked the Trust according to its terms. They gave written notice to the Bank to terminate the Trust, pursuant to Article VIII of the Trust document, but the Bank refused to comply with these requests. The Bank claims that Mrs. Thomas was incompetent at the time she attempted to revoke the Trust and that Mr. Grubbs cannot revoke it acting as attorney-in-fact for Mrs. Thomas. Complainant has conceded, however, that the Trust was correctly revoked, if an attorney-in-fact can revoke the Trust for the settlor.

### 3. *An Agent Can Be Delegated the Duty of Revoking a Trust*

"Powers of attorney are frequently classified as special and general, a more liberal construction in favor of the agent and third persons being allowed in the case of general than in the case of a special power." *Bukva v. Mathews*, 149 Va. 500, 514, 140 S.E. 674 (1927). Grubbs' power of attorney executed by Mrs. Thomas on October 8, 1990, is a general power of attorney, and it is clear and unambiguous.

"A person privileged . . . to perform an act or accomplish a result can properly appoint an agent to perform the act . . . unless public policy or the agreement with another requires personal performance . . . ." *Restatement (Second) of Agency*, § 17. No Virginia law or public policy prohibits an agent from revoking a trust pursuant to a valid durable power of attorney

which specifically authorizes the agent to "terminate any existing trust agreement which I may have . . . ."

In other states, it has been held that public policy prohibits agents from acting for their principals in matters uniquely personal to the principal, such as to marry, to take oaths, to vote at public elections, or to delegate performance under a personal service contract. In the few reported cases dealing specifically with durable Powers of Attorney, the Courts have defined nondelegability rather narrowly. In *Brewington v. Brewington*, 280 S.C. 502, 313 S.E.2d 53 (S.C. App. 1984), the Court seemed to recognize that the power to alter marital status could not be delegated to an agent under a Power of Attorney (in this case, divorce rather than marriage). Nevertheless, the Court held that the power to seek legal separation, separate maintenance, support, equitable distribution of property, unpaid support, and attorney's fees was exercisable by an agent under a Power of Attorney, in this case a durable one. Florida's Fifth District Court of Appeals in *In re Estate of Schriver*, 441 So. 2d 1105 (Fla. Dist. Ct. App. 1983), held that a widow's election to take a statutory share of her deceased husband's estate could be delegated to and made by an agent (under a durable power) on behalf of an incompetent widow.

However, the use of a power of attorney which grants the agent a power to create, add to, or terminate a trust in connection with estate planning is not similarly prohibited. On the contrary, it is a recommended practice of Professor Rodney Johnson and other leading authorities. J. Rodney Johnson, *Basic Will Drafting in Virginia, A Collection of Forms and Clauses* (1991).

In *Casey* v. *Commissioner of Internal Revenue*, 948 F.2d 895 (4th Cir. 1991), the Fourth Circuit observed that Virginia had traditionally construed powers of attorney narrowly, holding attorneys-in-fact to the letter of their instructions. *Id.* at 901. Nevertheless, the Court made it clear that such gifts by the agent could be made where the principal is specific in delegating such a power. In determining whether an attorney-in-fact has certain powers, Courts should first seek the principal's intent as manifest in the instrument itself and look to surrounding circumstances only to clarify any ambiguity in the instrument. *Id.* at 901, citing *Hotchkiss v. Middlekauf*, 96 Va. 649, 32 S.E. 36 (1899). One cannot "infer" powers to an instrument (*Id.* at 901, n. 4.), but in the case at hand, the power of attorney specifically provides that Mr. Grubbs can "do all such other acts, matters, and things in relation to all or any part of or interest in my property estate, affairs, or business of any kind or description in the State

of Virginia, as I myself might or could do if acting personally. *This includes power to terminate any existing Trust Agreement that I may have or to establish any Trust Agreement for me.*" (Emphasis added.)

The primary purpose of a durable Power of Attorney is to authorize an agent to manage and control the assets of the principal while he or she is incapable of managing those assets personally, and the power specifically includes the right "to terminate any existing Trust Agreement . . . ." It would be an anomaly to say that Virginia allows durable Powers of Attorney, and to then infer an exception for their use in revoking a trust.

The durable Power of Attorney was created by Mrs. Thomas with knowledge of the existence of the revocation language in paragraph VIII of the Trust, because the Trust was created prior to the creation of the durable Power of Attorney. The manifest intent of Defendant Thomas was to confer upon Defendant Grubbs, a close friend of her family and long-time financial advisor, the power to revoke the Trust. Defendant Grubbs may revoke the Trust under the general durable Power of Attorney given him by Mrs. Thomas.

### III. *Decision*

For the foregoing reasons, it adjudged and ordered that the Defendant Grubbs' Motion for Summary Judgment is granted, and the Trustee Bank shall comply with the notice of termination of the Thomas Trust given it by Grubbs pursuant to the October 8, 1990, durable power of attorney, which Grubbs holds for Mrs. Thomas.