(12 P.3d 899)

No. 84,434

SAMUEL B. MULLER, JR., as attorney in fact for CORDELIA E. MULLER, *Appellant,* v. BANK OF AMERICA, N.A., f/k/a NATIONSBANK, N.A., *Appellee.*

Opinion filed November 3, 2000.

*Richard D. Loffswold, Jr.,* of Girard, for appellant.

*Kevin F. Mitchelson, Jimmy E. Allen, Jr.,* and *Jason P. Wiske,* of Wheeler & Mitchelson, Chartered, of Pittsburg, for appellee.

Before GERNON, P.J., MARQUARDT, J., and ROBERT J. SCHMISSEUR, District Judge, assigned.

MARQUARDT, J.: Samuel B. Muller, Jr., filed suit against Bank of America N.A., f/k/a NationsBank, N.A., f/k/a Bank IV, Kansas, N.A., seeking a declaratory judgment to allow him to withdraw all assets from his mother's revocable inter vivos trust. He appeals the trial court's grant of summary judgment in favor of NationsBank. We affirm.

The facts are not in dispute. In March 1986, Cordelia E. Muller executed a general durable power of attorney designating her son Samuel as her attorney-in-fact. In November 1993, Cordelia executed a revocable trust naming herself and Bank IV as cotrustees. Under the terms of the trust, Bank IV was to manage the trust assets and pay part or all of the income and principal to Cordelia at her direction. In the event of her disability or impairment, Bank IV was authorized to provide for Cordelia's health and welfare, and for the health, support, maintenance, general welfare, and education of her spouse and minor children. Upon her death, the trust, with accumulated income, would pass to her estate. Cordelia reserved "the right to withdraw all or any portion of the trust estate at any time by delivering a written request therefor to the Corporate Trustee."

After execution of the trust, NationsBank became the successor to Bank IV. Samuel made a demand upon NationsBank to withdraw all of Cordelia's trust assets. NationsBank refused the request. In March 1999, Samuel's attorney sent a letter to NationsBank and demanded the withdrawal of the trust assets. Samuel claimed: (1) The trust management fees were excessive; (2) the corporate trustee had changed its identity at least three times; (3) the invested assets are of substandard performance; and (4) there was a possible conflict of interest. NationsBank refused to allow the withdrawal of the trust assets.

Samuel sued NationsBank, alleging that he had the right to demand withdrawal of the trust assets as Cordelia's attorney-in-fact. He subsequently filed a motion for summary judgment.

At some point during the litigation, Bank of America, N.A., became the successor in interest to NationsBank. Bank of America agreed that the material facts were uncontroverted and also filed a motion for summary judgment. The trial court entered summary judgment in favor of Bank of America, finding:

"6. Neither party contends the power of attorney or trust instrument is ambiguous and the court finds no reason to declare those instruments ambiguous.

"7. Cordelia E. Mueller is a living person and neither party alleges or presents evidence by which the court could find that she is incompetent or incapacitated. Defendant merely asserts in its motion for appointment of a guardian ad litem that she 'is an elderly person who now resides at Beverly Healthcare in Pittsburg, Kansas' and that she does not have a legally appointed conservator. Further, neither party claims that Cordelia E. Mueller is a person needed to be joined for a full adjudication of the issues before the court as is contemplated by K.S.A. 60-219."

The trial court ruled:

"6. The trust was established November 19, 1993, more than seven years after the power of attorney was executed on March 11, 1986. The trust reserves the power of amendment and revocation to the grantor. In reserving that power to herself, the grantor uses the terms 'I' and 'me.' She does not provide that her attorney in fact is to have that power. Likewise, the power of attorney does not mention the right to either establish or revoke trusts.

"7. The Kansas appellate courts have not had occasion to rule on the issue presented. The rule this court finds will be adopted by the Kansas appellate courts is: When the grantor or settlor of a trust reserves to herself the right and power to amend or revoke a trust or to withdraw assets from the trust estate, those rights and powers are not transferable in the absence of the grantor's express direction.

"8. In this case, the trust instrument specifically reserves those powers to the grantor. The power of attorney makes no mention of trust powers and grants the attorney in fact no specific power to revoke or amend the trust or to withdraw assets from the trust.

"9. The risk of loss and harm to the grantor of a trust is simply too great to permit such trust amendment without specific direction and authority from the grantor."

In his motion for summary judgment, Samuel argued that the language of the general power of attorney granted him the power and authority to withdraw the trust assets. In its motion for summary judgment, Bank of America argued that the withdrawal of assets had the effect of revoking the trust, and the power of attorney did not grant Samuel the power to revoke the trust. It argued

that the power to revoke the trust was personal to Cordelia, and could not be exercised by her attorney-in-fact.

A power of attorney is an instrument in writing by which one person, as principal, appoints another as agent and confers upon such agent the authority to act in the place of the principal for the purposes set forth in the instrument. *Peterson v. Peterson*, 10 Kan. App. 2d 437, 442, 700 P.2d 585 (1985). See Kansas Uniform Durable Power of Attorney Act, K.S.A. 58-610 *et seq.*

In construing the language of the power of attorney and the trust, the trial court, citing *Bank IV Olathe v. Capitol Fed'l Savings & Loan Ass'n*, 250 Kan. 541, 549-550, 828 P.2d 355 (1992), stated that a power of attorney is to be strictly construed. However, the power of attorney is not to be construed so as to defeat the intention of the grantor (throughout the opinion the words "grantor" and "settlor" are used interchangeably); rather, if the language is plain, the power is not to be extended or restrained by implication. The interpretation should give effect to the purpose of the principal in conferring such power. See *Grocer Co. v. Kinkaid*, 86 Kan. 167, 170, 119 Pac. 537 (1911).

In the instant case, the following relevant paragraphs of the power of attorney document delegate broad and specific powers to the attorney-in-fact:

"1. To exercise or perform any act, power, duty, right, or obligation whatsoever that I now have, or may hereafter acquire the legal right, power or capacity to exercise or perform, in connection with, arising from, or personal, tangible or intangible, or matter whatsoever.

. . . .

"5. To conduct, engage in, and transact any and all lawful business of whatever nature or kind for me, on my behalf, and in my name.

. . . .

[Paragraph 7 delegates several specific powers relating to Cordelia's financial accounts "now held or hereafter acquired with any bank." The last sentence states:] "The enumeration of the aforesaid specific authorities is not intended to, nor does it limit or restrict any of the general powers granted herein.

"8. I grant to said attorney in fact full power and authority to do, take and perform all and every act and thing whatsoever requisite, proper or necessary to be done, in the exercise of any of the rights and powers herein granted, as fully to all intents and purposes as I might or could do if personally present, with full power of substitution or revocation, hereby ratifying and confirming all that said

attorney in fact, or his substitute or substitutes, shall lawfully do or cause to be done by virtue of this power of attorney and the rights and powers herein granted.

"9. This instrument is to be construed and interpreted as a general power of attorney. The enumeration of specific items, rights, acts or powers herein is not intended to, nor does it, limit or restrict, and is not to be construed or interpreted as limiting or restricting, the general powers herein granted to said attorney in fact."

The power of attorney does not forbid the attorney-in-fact from withdrawing trust assets or revoking the trust; rather, the language expresses an intent to authorize the attorney-in-fact to act in place of the principal relative to all of her assets and business. See *Bank IV Olathe*, 250 Kan. at 550. The question before us is whether the broad general powers granted to the attorney-in-fact include the withdrawal of all trust assets, which would in essence revoke the trust, taking into account that the trust was established years after the power of attorney was executed.

NationsBank cites numerous cases to support its position that an attorney-in-fact does not have the power to revoke a trust where the settlor personally reserved the right to revoke. However, as noted by the trial court, the cited cases are factually distinguishable from the present case. Two cases quote the principle from Bogert, The Law of Trusts and Trustees § 1000 at 322 (Rev. 2d ed. 1983) that in the absence of express direction to the contrary, the power to revoke a trust is personal to the settlor, and when reserved to the settlor, the power does not pass to the settlor's successors in interest on the settlor's death, nor is it transferable by the settlor. See *Murphey v. Murphey*, 169 Ariz. 443, 819 P.2d 1029 (Ct. App. 1991); *In re Guardianship of Lee*, 982 P.2d 539 (Okla. App. 1999).

In *Murphey*, the trust document provided: " 'The powers reserved by the settlors, or either of them, are personal and shall not be exercisable by any guardian or other personal representative.' " 169 Ariz. at 444. The surviving settlor of the trust executed a general power of attorney appointing the appellant as her attorney-in-fact. The appellant subsequently made several modifications to the trust. The appellate court affirmed the trial court's finding that the durable power of attorney was personal and nondelegable on two grounds. First, the court stated: "The basic principles of trust law

prohibit the transfer to anyone, including one with the power of attorney, when the right to amend or revoke is reserved personally by the settlors." 169 Ariz. at 444. Second, the appellant was a "personal representative" of the surviving settlor and the trust language specifically precluded a personal representative from revoking or modifying the trust. 169 Ariz. at 445.

In the instant case, there is no trust language that either precludes or grants the attorney-in-fact the power to revoke or modify the trust.

The Restatement (Second) of Agency § 17 (1957) states: "A person privileged, or subject to a duty, to perform an act or accomplish a result can properly appoint an agent to perform the act or accomplish the result, unless public policy or the agreement with another requires personal performance; if personal performance is required, the doing of the act by another on his behalf does not constitute performance by him."

In *Matter of Mosteller*, 719 A.2d 1067 (Pa. Super. 1998), the settlor executed a living trust and retained full power to revoke the trust. He named a bank as the trustee. He subsequently executed a power of attorney which granted broad general powers to the bank and the appellant, including the right to " 'create a trust and/or make additions to an existing trust for my benefit' and to 'engage in and transact in my name all business that they or either of them may think proper.' " Further, he gave the attorneys-in-fact these powers, " '[a]ll with the same power to all intents and purposes with the same validity as I could do if personally present.' " 719 A.2d at 1067. After the settlor was declared incapacitated, the bank merged with another bank and transferred the trust powers to the new bank. The appellant objected and revoked the trust. The bank refused to honor the revocation. The Pennsylvania appellate court noted that Pennsylvania courts do not always follow the rule of strict construction and concluded that an attorney-in-fact could be granted the authority to revoke a trust:

"In the present case, it is true that the power to withdraw the income and corpus of a trust was not specifically granted in the power of attorney . . . . However, [the settlor] clearly granted Appellant the power to make trusts and to make additions to trusts . . . . Thus, he clearly intended for Appellant to have

the power to deal with the trust . . . . Even though not specifically given the power to revoke, it is clear that under controlling case law, the power of attorney must be construed to confer that power on Appellant, given its broad general grant of power and its specific language allowing the attorneys-in-fact to deal with trusts." 719 A.2d at 1069.

Other courts have reached similar results. In *Matter of Trust of Franzen*, 955 P.2d 1018 (Colo. 1998), the settlor created a trust designed to provide for him and his wife. He named a bank as the sole trustee. The settlor expressly reserved the power to revoke the trust and, upon his death, the power was to be assumed by his wife. After the settlor died, his wife appointed her brother as her attorney-in-fact. The power of attorney expressly authorized the brother to manage and " 'in any manner deal with' " the revocation of the trust. The brother attempted to revoke the trust and the bank refused. The Colorado Supreme Court, following the rule of strict construction, stated that the language in the instrument authorized the brother to revoke the trust. It held: "the principal may confer authority to amend or revoke trusts on an agent without referring to the trusts by name in the power of attorney." 955 P.2d at 1023.

In *First Union National Bank of Virginia v. Thomas*, 37 Va. Cir. 35 (1995), the court quoted the Restatement (Second) of Agency § 17 (1957) and noted that no Virginia law or public policy prohibited an agent from revoking a trust pursuant to a valid durable power of attorney which specifically authorized an agent to take such action. It concluded that an agent can be delegated the duty of revoking a trust. 37 Va. Cir. 35 at 39-40.

"It has been said that *an attorney in fact is essentially an alter ego of the principal* and is authorized to act with respect to any and all matters on behalf of the principal with the exception of those acts which, by their nature, by public policy, or by contract require personal performance." (Emphasis added.) 3 Am. Jur. 2d, Agency § 23, p. 529. There are few restrictions on the acts that a principal can delegate to an agent under a durable power of attorney, and the range of acts that are nondelegable is fairly narrow. Dessin, *Acting as Agent under a Financial Durable Power of Attorney: An Unscripted Role*, 75 Neb. L. Rev. 574, 582-83 (1996).

No Kansas statute or public policy prohibits an agent from withdrawing funds or revoking a trust pursuant to a valid durable power of attorney which authorizes such action. Under the Bogert principle, unless the settlor expressly states otherwise in the trust document or the power of attorney, the power to revoke a trust is personal to the settlor and is nondelegable. Cordelia executed the power of attorney years before the trust was created. If she had wanted the holder of the power of attorney to have special powers as it related to the trust, it is reasonable to assume that she would have designated those powers in her trust. Additionally, she could have executed a new power of attorney and specifically granted her attorney-in-fact those powers. Cordelia did not execute a new power of attorney. It is also curious that Cordelia was not declared a necessary party to the litigation below where she could have stated her intent as to the power of attorney. Without the specific grant of authority to Samuel, we hold that he lacked the power and authority to revoke the trust.

Affirmed.