In Re Kurrelmeyer Estate, No. 1079-03 Cncv (Katz, J., July 14, 2004)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                    SUPERIOR COURT
Chittenden County, ss.:                             Docket No. 1079-03 CnCv

KURRELMEYER ESTATE

ENTRY

    Two surviving children challenge the widow's having established a revocable trust under the Power of Attorney granted her by the deceased. It is stipulated that he was competent at the time the POA was made, although not competent at the time she established the trust, four year later. All assets of the deceased were placed in the trust, thus having the effect, if valid, of avoiding probate. Existence of the trust, however, has the effect of transferring the real estate from a mere life estate for the benefit of the widow to a situation in which it is owned by the trust and therefore within her ability, as trustee, to sell it and then dip into the

principal thereby obtained. The surviving children assert that this is lakeshore real estate, which has substantial opportunity for capital appreciation, thereby enhancing the value of their remainder interests under their late father's much earlier will.

The Power of Attorney has very broad language. It includes provisions authorizing the deceased's agent, his wife,

> (a) To add all of my assets deemed appropriate by my said attorney to any trust of which I am the Donor by: assigning, transferring and delivering to said trust . . . real estate . . . owned by me . . . .
> (b) [T]o execute and deliver any . . . deeds or trust instruments . . . .

In a nutshell, these are the facts upon which this case turns. The question raised is whether Mrs. Kurrelmeyer had the authority to create the revocable trust, convey into it the real estate, and thereby alter her own rights vis à vis plaintiffs, the surviving children. We conclude the answer is that she did not.

In reaching this conclusion, we look to both the specific POA language and the general law governing such powers. Turning first to that general law, we are persuaded of several principles which appear germane:

- Powers of attorney are strictly construed as a general rule and are held to grant only those powers which are clearly delineated;
- Discount or disregard, as meaningless verbiage, all-embracing expressions;
- Ambiguities in instrument are resolved against the party who made it or caused it to be made, because that party had the better opportunity to understand and explain his meaning;

- General words used in an instrument are restricted by the context in which they are used, and are construed accordingly.

King v. Bankerd, 303 Md. 98, 492 A.2d 608, 611-12 (1985) (citing, in part, Restatement (Second) of Agency § 34 and cmt. h (1958)).  Applying these general principles, the court in King v. Bankerd cited several ways in which powers of attorney have been delimited by the courts:

- A general power authorizing the sale of real estate permits the attorney-in-fact to determine the price and terms, but implies that the sale shall be for the principal's benefit;
- The attorney-in-fact does not have the authority to make a gift of the property.

Id., 492 A.2d at 612, citing cases.  The particular holding in King was that the agent was not authorized to give away property covered by the power, even to its author's wife.

This general rule regarding gifts is, of course, not unique to Maryland.  No gift may be made by an attorney in fact to himself or herself unless the power to make such a gift is expressly granted in the instrument itself and there is shown a clear intent on the part of the principal to make such a gift. Mischke v. Mischke, 247 Neb. 752, 759-760, 530 N.W.2d 235, 240-41 (1995); Vejraska v. Pumphrey, 241 Neb. 321, 488 N.W.2d 514 (1992).  Absent express intention, an agent may not utilize his position for his or a third party's benefit in a substantially gratuitous transfer. *Id.*

The law imposes few restrictions on acts that may be performed by attorneys in fact. Stafford v. Crane 241 F.Supp.2d 1239, 1246 (D.Kan., 2002). Generally, restrictions relate to the delegation of personal powers such as "making or revoking a will, funding a trust, changing beneficiaries on an insurance policy, taking a marriage vow or an oath, voting, performing under a personal service contract, and performing fiduciary responsibilities." C. Dessin, *Acting As Agent Under a Financial Durable*

*Power of Attorney: An Unscripted Role,* 75 Neb. L.Rev. 574, 582 n. 38 (1996) (citations omitted). The power to create a trust is generally non-delegable, *see* P. Sturgul, *Financial Durable Powers of Attorney: A Primer* 41 No. 5 Prac. Law. 21, 29-30 (July 1995). At least one court has held that a durable power of attorney which grants the power to manage and sell real and personal property to maintain and care for the principal does not authorize the agent to create an irrevocable trust. See Kotsch v. Kotsch, 608 So.2d 879, 880 (Fla.Dist.Ct.App.1992). In Kotsch, the court reasoned that a durable power of attorney grants only those powers specified therein and is closely examined to ascertain the intent of the principal. See id. In Kansas, a power of attorney is strictly construed and must be closely examined to ascertain the intent of the principal. See Muller, 28 Kan.App.2d 136, 12 P.3d 899. On the basis of these authorities, the court in Stafford v. Crane concluded that a power of attorney does not authorize the creation of an irrevocable trust, even if on the deceased's behalf, barring explicit authority.

Here, we have a situation in which the attorney-in-fact has both created a trust and thereby had a potentially material effect on the post-mortem wishes of the deceased, as reflected in his will. That instrument gave his widow a life estate in the real estate, but no more. The children were preserved its remainder. Hence, appreciation of this lakeshore parcel, so close to Burlington, remained a substantial interest left to them. The trust, however, has the potential for eliminating this interest. If an attorney-in-fact may not make a will, we conclude that she may not alter an existing will under authority purported to derive from the POA. A party may not do indirectly what she may not do directly. See In re Cabot Creamery Coop., 164 Vt. 26 at 29 (1995); Conseco v. Wells Fargo Financial Leasing, Inc., 204 F. Supp. 2d 1186, 1191 (S.D. Iowa 2002); but see In re Estate of Hegel, 668 N.E.2d 474, 476 (Ohio 1996) (rejecting exception to ademption law for attorney-in-fact who sells testator's property).

Having in mind the general rules for construing powers of authority first set out, we cannot conclude that the language here afforded Mrs. Kurrelmeyer the necessary authority to create the trust. To "add all my assets" to a trust implies the pre-existence of that trust. It is at least ambiguous on the issue of "adding" those assets to a trust which was not already extant. Similarly, to "execute trust instruments" does not explicitly authorize the creation of a trust where none existed. Rather, it is consistent with the idea that the attorney-in-fact may execute instruments necessary for the maintenance of a trust already in existence. Franzen v. Norwest Bank Colorado, 955 P.2d 1018, 1022 (Colo. 1998) (lower standard of specificity necessary to give authority when a trust is already in existence). The rule of strict construction bars stretching this language to the extent of creating a trust which not only was not already extant, but of a type such as was not extant at the time of creation of the Power in question.

For these reasons, we grant the motion of appellant children for summary judgment, deny that of appellee, and reverse the ruling of the Probate Court. We hold that creation of the revocable trust was beyond the authority of Martina Kurrelmeyer, and that the trust is therefore void. We note that appellants also seek the termination of Mrs. Kurrelmeyer's status as executor. We nevertheless decline to reach this issue, as the Probate Court is in a better situation to assess the propriety of her continuing in that office. With the trust issue resolved, it may be that Mrs. Kurrelmeyer may be quite content and appropriate for executing the balance of any requirements of the will and estate.

Dated at Burlington, Vermont, _____, 2004.



Judge