No. 45,878

MAE STEHLIK, Executor of the Estate of Harvey O. Weaver, Deceased *Appellant,* v. DEWEY F. WEAVER, *Appellee.*

(482 P. 2d 21)

Opinion filed March 6, 1971.

*John R. Hamilton,* of Topeka, argued the cause and was on the brief for the appellant.

*George Forbes,* of Emporia, argued the cause, and *Thomas Kreuger,* of Emporia, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Plaintiff brought this action for specific performance of an alleged contract for conveyance of an oil interest. Trial was to the court. At the conclusion of all the evidence plaintiff moved to amend her pleadings to conform to the evidence. The trial court denied this motion and entered judgment for the defendant in the action as originally brought. Plaintiff appeals from the order denying her motion to amend.

We first summarize the background facts:

Harvey O. Weaver and appellee Dewey F. Weaver were brothers. Harvey died in August, 1968. In October, 1968, appellant Mae Stehlik, as executor of his estate, commenced this proceeding against Dewey by filing her petition in which she alleged the execution of a written contract by Dewey to convey to Harvey one-half of the

working interest (less an override) in an oil and gas lease known as the Pixlee lease; she alleged nonperformance by Dewey and prayed he be required to perform. Dewey's answer admitted execution of the instrument in question but alleged subsequent material alteration in its content without his knowledge or consent; he also detailed his version of the transactions between his brother and himself and claimed full ownership in the Pixlee lease.

At pretrial conference the only controverted issues of fact were determined to be (1) whether Dewey had conveyed or agreed to convey to Harvey one-half of the working interest in the Pixlee lease and, if he had, (2) whether Harvey had paid Dewey in full for the lease and certain equipment. No complaint against this pretrial order has ever been made.

Trial was to the court. In view of the narrow issues raised on appeal not all of the evidence has been abstracted for us. That which has been presented consists of certain stipulations entered into by the parties, answers to written interrogatories, certain documentary exhibits, and oral testimony by Dewey, Dewey's tax accountant, Harvey's tax accountant and an officer of an Emporia bank. This evidence revealed the following:

In 1963 Harvey and Dewey Weaver learned that two Greenwood county oil leases held by C. B. Short and H. M. Lundquist were for sale. These were the Atyeo lease, covering 640 acres, and the Pixlee lease, covering eighty acres. After discussing the leases with Mr. Short the Weaver brothers decided to purchase them. Later Dewey made an offer to Short of $120,000 for the two leases. Short advised Dewey he and Lundquist would accept the offer of $120,000 on condition a contract with Short and Lundquist as sellers be executed in the amount of $95,000 and that the balance be paid to Short. The purchase offer was later reduced to $115,000 upon the same terms and was accepted. According to Dewey, both he and his brother were present when the final agreement was made with Short; Dewey wanted Harvey to give the $20,000 note to Short; however, Short stated he did not want Harvey's note because Harvey was going to be financially involved in the purchase of the leases but he would accept Dewey's note.

Later, on September 3, 1963, a written contract of sale was executed wherein Lundquist and Short were designated as sellers and Dewey as purchaser of the two leases. Harvey was not named as a party to this instrument. The contract stated the sum of

$95,000 as the purchase price. Upon execution of the contract Dewey made a down payment of $9,500 (10% of the purchase price) which was deposited with an escrow agent along with the contract pending approval of title. Dewey gave Short a non-interest bearing note for $20,000 payable in forty-two months and to offset this Harvey gave Dewey a noninterest bearing note for $20,000 due in twelve months. Later, Harvey paid the remaining $85,500 of the purchase price of the two leases and Dewey assigned the two leases to him. The brothers considered the Pixlee lease worth $5,000. Harvey assigned it and $4,500 worth of equipment on the Atyeo lease to Dewey, this in consideration of the $9,500 advanced by Dewey. Dewey was to receive no other remuneration for his part in handling the transaction as Harvey was buying part of the property and Dewey was buying part of it.

At the end of one year Harvey renewed his note to Dewey by the delivery of a new note for $20,000 bearing interest at the rate of six per cent per annum. In 1965 Dewey turned this note over to an Emporia bank for collection. On November 18, 1965, Harvey paid the note by depositing with the bank to Dewey's credit the sum of $21,390, being the principal plus interest in the sum of $1,390.00. (It may be noted that recovery of this $21,390 comprised the basis for appellant's motion to amend). On the same date Harvey had Dewey sign a written instrument. This document, which was the alleged contract upon which appellant sued for specific performance, received in evidence as appellant's exhibit, was as follows:

"To Whom This May Concern

"November 18, 1965.

"This is to certify that Harvey O. Weaver, Emporia, Kansas, has paid Dewey F. Weaver of Emporia Kansas in full on all indebtedness, including notes. And for lease, lease equipment as of November 18, 1965. And for ½ of ⅞—3% working interest in W½ of SW¼ of section 5-22-10 Greenwood County, Kansas. Sale of lease and oil runs effective July 1, 1966. With merchantable title. All bills paid in full on lease, for the sum of $23,135.00." (Our underscoring.)

(The legal description is that of the Pixlee lease.)

Dewey testified he signed the document as a receipt but that when he did so it concluded with the sentence, "And for lease, lease equipment as of November 18, 1965"; it contained nothing thereafter except his signature; he signed the instrument at

Harvey's request so as to acknowledge that all of Harvey's indebtedness to him had been paid. He testified that the language we have underscored in the exhibit was not in the document when he signed it.

Dewey has never paid the Short note. Dewey testified that in 1967 Short informed him he (Short) was being investigated by the internal revenue service and he did not want Dewey to tell the service he had received a $20,000 note from Dewey; Dewey replied he would not disclose the note unless forced to do so to protect himself. Later, agents of the internal revenue service questioned Dewey about the matter and he showed them a copy of the note he had given Short; in 1967 Dewey assumed, because of his conversation with Short, that he would not have to pay the Short note; after discussing the tax aspect with his accountant he thought he would have a resulting income and he reported the sum of $20,000 as income for the year 1967; he had never given Harvey any part of this $20,000; Harvey had never asked him for any part of it; Dewey requested Short to return the original note to him but Short indicated he would not do so.

In a discovery deposition taken by appellant Dewey gave the following testimony:

"Q. Is the note that you executed to Mr. Short outstanding and still owing, in your opinion?

"A. As far as I am concerned, it is.

"Q. Do you know—has Mr. Short indicated anything contrary to that to you?

"A. No.

"Q. Why doesn't Mr. Short want this paid, if you know?

"A. He told me that it was because of tax problems. Examination, is what he referred to it as."

Quizzed at trial about these answers in his deposition, Dewey testified he still didn't know he wouldn't have to pay the note; as far as he was concerned if Short would demand payment, he, Dewey, would have this obligation; the note was not outlawed; Dewey did not know whether Short had ever told his partner Lundquist about the $20,000 note and Lundquist may not have known about it.

Harvey's tax accountant testified Harvey's 1965 tax records indicated he had paid $120,000 for the Atyeo lease and had sold the Atyeo lease for $140,000 plus retention of an overriding royalty.

By stipulation the parties agreed Lundquist would testify, if

called, that the sale of the leases was made for the sum of $95,000 with no other consideration involved to his knowledge.

The record also contained certain answers by Short to appellant's written pretrial interrogatories, reading in part as follows:

"Plaintiff's Question No. 6:

"State all business transactions that you have had with Dewey F. Weaver in the last ten years.

"A. I don't recall.

"Plaintiff's Question No. 7:

"Were you a part owner of an oil lease covering the following described property, to-wit: [the realty subject to the Atyeo and Pixlee leases]"

"A. To answer that correctly, I'd have to check the records there of the protector leases I own. I signed an affidavit, but I don't remember it.

"Plaintiff's Question No. 8:

"What was your interest in the lease covering the above mentioned real estate?

"A. I was a half-interest owner.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Plaintiff's Question No. 10:

'What was the other owner's name?

"A. Me and Lundquist own it. H. M. Lundquist.

"Plaintiff's Question No. 11:

"Did you and H. M. Lundquist of Tulsa, Oklahoma, sell the lease covering the above mentioned real estate to either Dewey F. Weaver or Harvey O. Weaver in September of 1963?

"A. Yes, we sold it to them.

"Q. If so, to whom was it sold?

"A. It was sold to Weaver Brothers.

.   .   .   .   .   .   .   .   .   .   .   .   .

"Plaintiff's Question No. 13:

"What was the total sale price and to whom were transfers issued?

"A. I don't remember that. I thought it was a hundred and ten thousand, and they say it's ninety.

"Plaintiff's Question No. 14:

"Did you pay any commission to anyone in connection with the sale of the lease covering the above mentioned real estate?

"A. No.

"Plaintiff's Question No. 15:

"Did you or H. M. Lindquist receive any other consideration for the sale of the lease.   .   .   .

"A. No, ma'am

".   .   .   or were you tendered any other considerations of any nature?

"A. No.

"Plaintiff's Question No. 16:

"Where were you paid the total consideration for the sale of the lease?

"A. I can't answer that.

"Plaintiff's Question No. 17:

"Do you know from your own knowledge if Dewey F. Weaver received any commission, finder's fees, or other considerations from anyone other than you and H. M. Lundquist in connection with the transaction involving the sale of lease on the above mentioned real estate?

"A. I can't answer that. I don't know.

"PLAINTIFF'S QUESTION No. 18:

"Was the lease paid for in full at the close of the transaction in September of 1963?

"A. It was.

"PLAINTIFF'S QUESTION No. 19:

"Did you sign the affidavit or instrument directed 'To whom This May Concern'? State the date on which the instrument was signed.

"A. That's one question I don't remember.

"PLAINTIFF'S QUESTION No. 20:

"Who prepared the 'To Whom This May Concern' instrument signed by you and at whose request did you sign the same?

"A. I don't know.

"PLAINTIFF'S QUESTION No. 21:

"Is Dewey F. Weaver indebted to you at the present time for any amount whatsoever?

"A. No."

Short gave the following answers to appellee's cross-interrogatories:

"DEFENDANT'S CROSS QUESTION No. 1:

"Did you, on or about September 3, 1963, have delivered to you by Dewey F. Weaver, and have in your possession, a promissory note dated September 3, 1963, in the amount of Twenty Thousand Dollars ($20,000.00) made payable to C. B. Short, due thirty-two (32) months after date, bearing the signature of Dewey F. Weaver?

"A. No. He never did owe me nothing. I don't know. Whoever got that up that they owed me $20,000. That's more than I can figure it. They never owed me a cent.

. . . . . . . . . . . . . .

"DEFENDANT'S CROSS QUESTION No. 5:

"If Question No. 1 was answered negative, do you agree that in the event such a note is in existence that the same should be considered terminated, cancelled unenforceable and void.

"A. It should be void, shouldn't it.

"DEFENDANT'S CROSS QUESTION No. 6:

"Did Harvey O. Weaver call upon you in Magnolia, Arkansas, at some time after the completion of the sale of the Atyeo and Pixlee Leases in Greenwood County, Kansas, to Dewey F. Weaver in September of 1963?

"A. Harvey Weaver was in Magnolia, yes.

. . . . . . . . . . . . . .

"DEFENDANT'S CROSS QUESTION No. 9:

"State whether or not Harvey O. Weaver ever made an inquiry to you about the existence of a note in the amount of Twenty Thousand Dollars

($20,000.00) due to you from Dewey F. Weaver, and if so, when said inquiry was made.

"A. He never made any."

Appellant also introduced into evidence two affidavits secured by Harvey, one by Lundquist which was sworn to on November 5, 1965, and one by Short sworn to on November 30, 1965. Each affidavit stated the total consideration for the purchase of the two leases had been $95,000.

Other testimony respecting alteration of the November 18, 1965, instrument (not material to this appeal) was offered. At the conclusion of all the evidence, and after all witnesses in the case had been excused, appellant orally moved the court to amend the pleadings to conform to the evidence so as to recover the $21,390 paid by Harvey to Dewey. Appellant's counsel did state he had no objection to a continuance to enable appellee to present evidence in opposition to the new claim. The trial court denied the motion to amend and rendered judgment for appellee, finding there had been a material alteration, as alleged by appellee, in the contract sued upon. In making its ruling the court discussed the evidence at length, several times characterizing the dealings revealed by it as peculiar and unethical, if not wanting in honesty, and indicating in a very realistic and objective appraisal doubt as to what had really occurred. The trial court also commented on the failure to have Mr. Short in court as a party in view of the relief requested. In denying the motion to amend the court stated it gave consideration to the evidence in support of the new claim but did not deem it sufficient to support the motion.

Appellant does not challenge the trial court's judgment denying her specific performance; her appeal is only from the order denying her motion to amend the pleadings to conform to the evidence. She argues the order results in manifest injustice to her because the evidence disclosed appellee made a secret profit of $21,390 at Harvey's expense.

K. S. A. 60-215 (b), pursuant to which appellant made her motion, provides:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on

the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

It is well established that the granting of a motion to amend the pleadings to conform to the evidence lies within the sound discretion of the trial court. The right to amend to conform to the evidence is necessarily dependent upon the particular facts and circumstances, and the action of the trial court in granting or denying such leave is not subject to review except for abuse of discretion (1A Barron and Holtzoff, Federal Practice and Procedure, Rules ed. [Wright], § 449; see also, *Trimble, Administrator v. Coleman Co., Inc.,* 200 Kan. 350, 437 P. 2d 219).

We recognize the rule that in furtherance of justice, amendments should be freely allowed to conform to the evidence, the theory being that where an issue has been tried by express or implied consent of the parties, the amendment procedure simply carries into effect that which the parties by their conduct have agreed to (see Gard's Kansas Code of Civil Procedure, § 60-215 [*b*], p. 82).

The trial court here specifically ruled the new claim was not an issue "tried by express or implied consent of the parties", as contemplated by 215 (*b*). Our review of the record convinces us the court correctly appraised the situation. Certainly appellee never at any time, in any fashion, agreed to try the issue of the recovery of the $21,390. Appellant showed payment of that amount in her effort to claim entitlement to specific performance of the purported contract.

Appellant stated her new claim was based upon the theory of fraud or unjust enrichment. In excuse of her failure to raise these issues more timely, she says she was not previously fully apprised of the facts and was misled by certain statements in appellee's discovery deposition to the effect he still owed the Short note. She argues her new claim is based on a complete change in appellee's testimony at trial to the effect the note had been cancelled. We are unable to arrive at this interpretation respecting any significant variance between appellee's deposition and his trial testimony. The fact he treated the Short note in a particular way for income tax reporting would not be determinative of his liability for the obligation. He could not, in this manner, unilaterally cancel a contract

obligation. Appellee was called and testified as appellant's first witness yet it was not until appellee had presented his evidence and all witnesses had been excused that the motion to amend was made.

About a week before trial counsel for appellant did state to appellee's counsel he was considering amending his pleading to make some claim to a portion of the $20,000 and he wanted to know if that would cause delay in the trial. Being informed such a motion would not cause delay, counsel for appellant later informed appellee's counsel he was not going to request any such amendment. Appellee therefore did not produce his defense on the issue at trial. However, he points out the evidence did in fact reveal Harvey had full knowledge of the entire transaction respecting the purchase price of the two leases as disclosed by the two affidavits secured by him, one by Lundquist dated November 5, 1965—thirteen days before Harvey paid the $21,390—and the other by Short dated November 30, 1965, and that Harvey did nothing about the situation and no suit of any kind was ever commenced until this action by the executor filed October 7, 1968. He further points out the new claim in any event would be barred by the applicable statutes of limitation —three years for an action based on unjust enrichment (K. S. A. 60-512) and two years after discovery for an action based on fraud (K. S. A. 60-513)—not having been presented until raised by appellant on April 16, 1969.

The situation appears to be this: Appellant, with full knowledge of the facts as to the propriety of the payment of the $20,000 additional purchase price, framed her lawsuit and went to trial upon her claim to a one-half interest in a lease (which by reason of considerable expenditure of development money by appellee had become a lucrative property). After presentation of all evidence appellant for the first time attempted to inject in the case a completely new and entirely different claim for relief. In making its denial order the trial court stated it had given consideration to the evidence relied upon by appellant but deemed it insufficient. Its journal entry of final judgment, after disposing of the claim for specific performance, recited that the court found "the evidence does not tend to support a claim for Plaintiff upon any other theory".

In view of all the foregoing we cannot say the trial court abused its discretion in denying the motion to amend.

We have considered other matters urged in derogation of the order appealed from, but find nothing warranting further discussion.

The judgment is affirmed.

APPROVED BY THE COURT.