No. 71,703

VICTOR W. MILLER, *Appellee/Cross-appellant*, v. ARNOLD E. BOTWIN, M.D., *Appellant/Cross-appellee*.

(899 P.2d 1004)

Opinion filed July 14, 1995.

*T. Bradley Manson*, of Payne & Jones, Chartered, of Overland Park, argued the cause, and *Donald R. Whitney*, of the same firm, and *Douglas A. Alpert*, of

Botwin & Company, of Kansas City, were with him on the briefs for appellant/cross-appellee.

Todd B. Butler, of Shaw, Hergenreter, Quarnstrom & Kocher, of Topeka, argued the cause and was on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

ABBOTT, J.: This is a lawsuit by Victor Miller, an attorney, to recover attorney fees from Arnold Botwin, M.D., based on a written contingency fee agreement. Botwin counterclaimed, seeking to have the trial court declare the contingency fee agreement unenforceable and for the trial court to determine a reasonable fee. Following a bench trial, the trial court entered judgment in favor of Miller in the amounts of $59,675.53 and $5,523, plus prejudgment interest, and $110.35, representing expenses advanced. Botwin appeals, and Miller cross-appeals.

The facts underlying this appeal are largely undisputed. In March 1989, defendant Botwin retained plaintiff Miller to obtain property tax reductions on several commercial real estate properties owned by Botwin in Shawnee County. Botwin signed a contingency fee agreement concerning the representation. Under the agreement, Botwin agreed to pay Miller 50% of any tax savings (based on one year's taxes) obtained at the "local" level (efforts with the county appraiser, a hearing panel, or the Board of County Commissioners, according to Miller) and 70% of any tax savings obtained through an appeal to the Board of Tax Appeals (BOTA) or any other court. Botwin acknowledged that he signed the agreement and that he had no discussions with Miller concerning the specific amount of tax savings which might be realized through Miller's representation. In the agreement, Botwin agreed to pay one-half of the fees owed at the time he received the reduction and the balance upon receipt of the 1989 tax bill.

Miller was successful in obtaining property tax reductions for Botwin on each of the properties involved. Miller's testimony revealed the extent of the tax savings on the various tracts.

Tax savings for the Barrington Village property were $51,530.85. These savings were realized following a stipulation with the county appraiser after an appeal to BOTA was filed. Miller charged a 50%

fee, although he felt he could have charged a 70% fee, for a fee of $25,765.43.

For Brad's New Way Station, Miller obtained a $2,495.92 tax savings at the local level. Miller charged a 50% fee, for a fee of $1,247.96.

A total tax savings of $45,522.42 was realized on the Highland Crest shopping center properties. These savings were obtained in accordance with a stipulation after an appeal to BOTA was filed. Although Miller felt he could have charged a 70% fee for Highland Crest, he charged a 50% fee. Moreover, the fee to which Miller testified he was entitled, $21,977.15, was slightly less than 50% of the tax savings. Miller stipulated that he would hold himself to the $21,977.15 fee rather than ask for the full 50% ($22,761.21).

An initial tax savings of $63,678.58 was obtained at the local level for the South City Plaza (South City) property. Miller charged the 50% fee, for a fee of $31,839.28. Miller also sought an additional savings by filing an appeal to BOTA and ultimately to the district court; the appeal was eventually resolved by stipulation. The appeal resulted in an additional $11,047.31 savings. Miller billed a 70% fee for the additional savings, resulting in an additional fee of $7,733.12.

Botwin paid Miller $10,000 toward his legal fees. Miller offered more than once to reduce certain fees if Botwin would pay the remaining balance in full, but Botwin did not make additional payments.

Miller then instituted this action in the district court to recover his fees. Miller's petition sought $59,675.53 at the 50% contingency fee level and $7,733.12 at the 70% contingency fee level. Miller sought an additional $110.35 in costs paid during the representation. Botwin counterclaimed, seeking to have the contingency fee contract invalidated and asking the district court to determine a reasonable fee.

Trial was to the court. Immediately before trial, the defendant requested a continuance due to inadequate preparation time after defendant's counsel spent the day prior to trial in a deposition. The district court denied the motion.

At the end of the first day of evidence, the plaintiff asked the district court to amend the pleadings to conform to the evidence because the $59,675.53 and $7,733.12 figures were different than the total balance owing on defendant's bill, which was $79,347.12. The court indicated the pleadings could be conformed if it was merely a mathematical miscalculation. On the second day of trial (three days later), the court clarified that if the evidence did not support conformation of the pleadings, the court would go back to the amount prayed for in the petition or any amount between the amount in the petition and the amount asked for at trial.

Following trial, the court ruled that the fees charged were reasonable. The court found that the defendant received a great benefit from the representation, that the fees were comparable to those charged in the community, that Botwin was not influenced to sign the contingency fee contract, and that the matter was difficult and complex and extended over a long period of time. The court then granted judgment to Miller in the amount prayed for in the petition, $59,675.53, with prejudgment interest from January 1, 1992. With regard to the $7,733.12 sought, the court opined that a 70% fee would be justified but allowed, as a matter of equity, only a 50% fee of $5,523, with prejudgment interest from January 1, 1993. The court also awarded $110.35, the amount of costs paid by Miller during the representation.

Botwin's motion for a new trial was denied. Botwin timely appealed, and Miller timely cross-appealed. The appeals were transferred to this court pursuant to K.S.A. 20-3018(c) (transfer on this court's own motion).

## I. CONTINGENCY FEE AGREEMENT

Botwin first argues that the contingency fee agreement is unenforceable because it is not in compliance with Model Rule of Professional Conduct (MRPC) 1.5 (1994 Kan. Ct. R. Annot. 306), adopted by this court in Rule 226 (1994 Kan. Ct. R. Annot. 286). The pertinent parts of MRPC 1.5 were adopted in 1988 and had no counterparts in the Rules existing prior to July 1, 1988. MRPC 1.5 states in pertinent part as follows:

"(d) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (f) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, and the litigation and other expenses to be deducted from the recovery. *All such expenses shall be deducted before the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the client's share and amount and the method of its determination. The statement shall advise the client of the right to have the fee reviewed as provided in subsection (e).*

"(e) Upon application by the client, *all fee contracts shall be subject to review and approval by the appropriate court having jurisdiction of the matter and the court shall have the authority to determine whether the contract is reasonable.* If the court finds the contract is not reasonable, it shall set and allow a reasonable fee." (Emphasis added.)

Botwin claims three violations of MRPC 1.5. First, Botwin points out that the agreement did not provide for deducting expenses prior to calculating the fee. Second, Botwin reasons that Miller failed to inform him, either in the agreement or in subsequent statements, of his right to have the fee reviewed by a court. Third, Botwin argues that the contingency fees called for in the agreement violate MRPC 1.5 because the fees are not reasonable.

The Scope of the Model Rules of Professional Conduct (1994 Kan. Ct. R. Annot. 288) states that a violation of a model rule of professional conduct is not intended to be a basis for civil liability. Botwin argues that he is not seeking to use the MRPC violation as the basis for liability; rather, he is seeking to preclude Miller from his own cause of action to recover attorney fees which are in contravention of the Model Rules of Professional Conduct.

Botwin cites no authority for his argument that Miller's failure to strictly comply with MRPC 1.5 invalidates the entire contingency fee agreement. He merely argues that the legal enforceability of a contract and the interpretation of disciplinary rules are questions of law, review of which is unlimited. See *Mark Twain Kansas City Bank v. Cates*, 248 Kan. 700, 704, 810 P.2d 1154 (1991); *LeaseAmerica Corp. v. Stewart*, 19 Kan. App. 2d 740, Syl. ¶ 1, 876 P.2d 184 (1994).

The failure to adhere strictly to the requirements concerning contingency fee agreements set forth in MRPC 1.5(d) does not in itself invalidate a contingency fee agreement. While noncompliance with MRPC 1.5 may give rise to a disciplinary action, fee agreements which are otherwise reasonable will not be ignored because of minor noncompliance with the Model Rules of Professional Conduct. However, noncompliance may be considered in evaluating the reasonableness of the fees in general. Reasonableness is the crux of Botwin's argument.

Miller's failure to specify in the contingency fee agreement the method and manner in which expenses were to be deducted, while not invalidating the entire agreement, does not mean Miller's claim for $110.35 in expenses was properly handled. It was not.

MRPC 1.5(d) requires expenses to be taken out before the contingency percentage is calculated. Here, the trial court erroneously assessed the $110.35 after the contingency fee was computed. The $110.35 expenses advanced should first be deducted from the total savings, and Miller's contingency fee then would be computed on the remaining sum. We realize this will result in a *de minimis* sum in this case, but it is the proper method to calculate the fee. Thus, that part of the judgment is reversed and remanded for the trial court to recompute the fee as directed by MRPC 1.5(d), which will result in Miller's fee being reduced by $55.18.

## II. REASONABLENESS OF FEE

The crux of Botwin's appeal is that the fees assessed by Miller were not reasonable. MRPC 1.5(a) sets forth factors to be considered in determining whether fees are reasonable:

"A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent."

The trial court noted that the matter was a very difficult and complex one extending over a long period of time (MRPC 1.5[a][1]); the fees are comparable to those customarily charged by others in the community, including fees charged by attorneys and non-attorneys (MRPC 1.5[a][3]); Botwin received a great benefit from the representation (MRPC 1.5 [a][4]); and Botwin voluntarily signed a contingency fee contract (MRPC 1.5[a][8]).

Botwin acknowledges that the reasonable value of attorney fees is within the sound discretion of the trial court. See *City of Wichita v. B G Products, Inc.*, 252 Kan. 367, Syl. ¶ 3, 845 P.2d 649 (1993). In the event this court finds that the trial court abused its discretion in determining attorney fees, this court may, in the interest of justice, fix such fees. 252 Kan. 367, Syl. ¶ 4.

The trial court awarded Miller fees of $59,675.53 and $5,523.00. In addition to the $10,000 already paid by Botwin, the attorney fees awarded total $75,198.53. Botwin argues that these fees are not reasonable under the circumstances.

Botwin first points to the magnitude of the percentages themselves: 50% and 70%. Botwin cites the testimony of David Holstead, an expert called on Miller's behalf. Holstead is an attorney who handles property tax cases. He noted that ad valorem taxation is a technical area of the law. He also pointed out the difficulty in achieving reductions because there is a presumption that the amount assessed is correct and the burden is on the taxpayer to prove a lesser amount was proper. Holstead testified that his contingency fee arrangements are typically for 50% of the first year reduction and a reduced percentage (33% or 25%) of additional reductions in subsequent years. Holstead charged a 50% contingency fee for all reductions received at the local level or through an appeal to BOTA or the district court, and he noted that he generally did not expect to succeed at the local levels. Holstead believed a 50% contingency fee was reasonable because the attorney takes the risk that if no tax savings are realized the attorney will not be paid and said he would lose money charging less than

50%. He acknowledged that he would charge less than 50% in simple cases where the taxation error is easily identifiable. Holstead opined that a contingency fee greater than 50% may carry a presumption of excessiveness, but he acknowledged that a 70% contingency fee may be warranted in unusual circumstances. Finally, Holstead indicated that an hourly fee for the same work may be $175 in commercial property cases.

Botwin points out that Miller boasts of a higher success rate at the local level than Holstead and others, yet he charged 50% for work at the local level and 70% for work at the BOTA or district court level. Thus, Botwin reasons, Miller's fee structure is for larger fees for less work in comparison to what Holstead testified was reasonable.

Botwin also points out that although ad valorem taxation may be somewhat technical, the work may often be done by non-attorneys and no attorney is required for representation at the local level. Botwin himself hired an appraisal firm, non-attorneys, to handle reductions for subsequent years at a contingency fee of 33⅓%, and he hired an attorney at $65 per hour. Botwin also reasons that the work is not "novel" because, although Miller claimed he educated himself about the process, changes in the reappraisal law which took effect in 1989 made no change to the manner in which commercial property taxes were calculated.

Botwin next points to the "small quantity of attorney time and effort" expended by Miller in obtaining these reductions. He points out that Miller kept no record of the time he spent working Botwin's files. The only estimation Miller gave was that he spent 60 hours on the South City files. Botwin urges this court to compare the contingency fee as if it were an hourly fee in line with the hourly fee charged by others in the community. See *McGill v. City of Ottawa,* 773 F. Supp. 1473, 1476 n.5 (D. Kan. 1991). Botwin points out that the first 30 hours spent on South City at the local level resulted in $31,839.28 in fees, the equivalent of approximately $1,061 per hour.

Next, Botwin argues that Miller's quality of work was lacking because he did not independently have the properties appraised by an MAI-designated appraisal expert. Moreover, Botwin points

out that he sought further reductions on the properties after those obtained by Miller.

Miller also directs this court's attention to the MRPC 1.5 factors of reasonableness. He reasons that his work was novel and technical because it was done during the first year of a statewide reappraisal and because the burden is on the taxpayer to establish that the appraisal was incorrect. Miller also points out that the customary contingent fee is 50%, a fee which some also charge for the second year of a reduction. Next, Miller points to his experience and reputation in handling property tax reductions. He also stresses that he risked receiving no attorney fees if no tax savings were realized. Miller notes that his work on Botwin's files extended 45 months from the onset of his representation. Finally, Miller points out that the substantial tax savings Botwin received was a savings for not only 1989 but also for subsequent years because of a presumption that an appraisal value for one year is valid for subsequent years.

The fees awarded by the trial court total $75,198.53, including the $10,000 already paid by Botwin. By our calculations, the fees amount to approximately 43% of the tax savings Botwin received for 1989. The trial court found that these fees were reasonable. The trial court gave ample reasons in accordance with the factors set forth in MRPC 1.5(a) supporting its decision. Botwin presented no evidence that the 50% fee was not reasonable. A 50% contingency fee was in accordance with the customary fee charged by other attorneys in the community. Although comparing the 50% contingency fee with a fee computed on an hourly basis reveals an hourly fee in excess of $600 per hour for the South City property, that fact is not dispositive. Miller bore the sole risk of receiving no fees in the event that no tax savings were realized. It is significant that the tax benefit carries over to future years. Having reviewed the award of attorney fees in light of all the circumstances and the factors set forth in MRPC 1.5(a), we cannot say that the trial court abused its discretion in its award of attorney fees.

### III. CONFORMED EVIDENCE

Miller's cross-appeal argues that he was entitled to fees greater than those granted by the trial court. At the end of the first day of

testimony Miller asked the trial court to allow the pleadings to conform to the evidence. The problem with the pleadings was that the amounts prayed for did not correspond with the amounts Miller believed were owed. The trial court initially stated that the pleadings could conform to the evidence if it were merely a mathematical miscalculation. On the second day of trial, however, the trial court indicated that if the evidence did not support the increased amount, the trial court could award only the amounts prayed for or any amount in between. Ultimately, the trial court awarded only the amounts prayed for in the petition and, in fact, reduced one amount sought to a 50% fee rather than a 70% fee.

Miller argues that the trial court erred in failing to award attorney fees in accordance with the evidence. He contends that fees earned at the local level (50% fees) were $80,829.86, of which Botwin had paid $10,000. Miller contends, therefore, that instead of awarding $59,675.53, the trial court should have awarded $70,829.86.

Miller acknowledges that the granting or denial of a motion to amend pleadings to conform to the evidence lies within the sound discretion of the trial court. *Stehlik, Executor v. Weaver*, 206 Kan. 629, Syl. ¶¶ 1, 2, 482 P.2d 21 (1971); see *Anderson v. Heartland Oil & Gas, Inc.*, 249 Kan. 458, 470, 819 P.2d 1192 (1991), *cert. denied* 118 L. Ed. 2d 551 (1992).

Miller argues that the trial court allowed the pleadings to conform to the evidence but then, in granting judgment, failed to mention the conformed amount. Miller ignores that the trial court stated that it would only allow the pleadings to conform to the evidence if there was a mathematical miscalculation and that the trial court, on the second day of trial, indicated that if the evidence did not support amendment of the pleadings it would not do so.

Before addressing the evidence on this issue, we note that Miller made an argument to the trial court inconsistent with his position on this issue. Botwin, in a motion for a new trial, argued that the court's judgment was contrary to the evidence. In his response, Miller framed the issue as whether the judgment conformed to the evidence. Miller argued that the judgment did indeed conform to

the evidence. Now, on appeal, Miller argues that the judgment did not conform to the evidence.

The evidence of fees for tax reductions at the local level to which Miller claimed at trial he was entitled was confusing. It is helpful to put the material into chart form.

| Property | Tax Savings | 50% Fees | Fees Sought |
|---|---|---|---|
| Barrington Village | $ 51,530.85 | $25,765.43 | $25,765.43 |
| Brad's New Way Station | $ 2,495.92 | $ 1,247.96 | $ 1,247.96 |
| Highland Crest | $ 45,522.42 | $22,761.21 | $21,977.15 |
| South City | $ 63,678.58 | $31,839.29 | $31,839.29 |
| TOTAL | $163,227.77 | $81,613.89 | $80,829.83 |

These totals differ slightly (a few cents) from the amount Miller claims is due. These amounts do not include the additional reduction of $11,047.31 on the South City taxes or the 70% fee ($7,733.12) charged by Miller for that work. On that issue, the trial court granted only a 50% fee ($5,523), which Miller does not contest.

Of the $80,829.83, Botwin had paid $10,000; therefore, according to these calculations, the balance was $70,829.83. This calculation is easily reached according to the above amounts. However, in his petition, Miller only sought $59,675.53 as fees at the local level.

The $59,675.53 amount sought appears to have been taken from a January 18, 1993, letter from Miller to Botwin's daughter offering to reduce the balance owed to that amount if Botwin would sign over a $11,047.31 refund check Botwin had received. Botwin never tendered the $11,047.31 check. Even if the check had been tendered, the remaining balance would have been $59,782.52, not $59,675.53, for fees on tax savings obtained at the local, 50%, level, and that would not have included the 70% fee on the $11,047.31 refund check.

It seems evident that the trial court granted judgment on the local tax savings fees according to the amount prayed for in the petition. Based on the record before us, we cannot say the trial judge abused his discretion in doing so.

## IV. PREJUDGMENT INTEREST

The trial court awarded prejudgment interest on the awards of $59,675.53 and $5,523.

Prejudgment interest is governed by K.S.A. 16-201. The allowance of prejudgment interest under K.S.A. 16-201 is a matter of judicial discretion subject to reversal only when there is an abuse of discretion. *Crawford v. Prudential Ins. Co. of America*, 245 Kan. 724, 737, 783 P.2d 900 (1989). The general rule in Kansas is that prejudgment interest is allowable on liquidated claims. "A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same becomes definitely ascertainable by mathematical computation. [Citation omitted.]" *Kilner v. State Farm Mut. Auto. Ins. Co.*, 252 Kan. 675, 686-87, 847 P.2d 1292 (1993); see *Arrowhead Const. Co. v. Essex Corp.*, 233 Kan. 241, Syl. ¶ 7, 662 P.2d 1195 (1983). The fact that a good-faith controversy exists as to whether the party is liable for the money does not preclude a grant of prejudgment interest. *Crawford*, 245 Kan. at 737.

Botwin argues that the trial court erred in awarding prejudgment interest because the reasonableness of the contingency fees was disputed and because the amounts were unliquidated until the trial court set a reasonable fee. He points out that the reasonableness of the contingency fees are subject to review by the trial court under MRPC 1.5(e). He asserts, therefore, that contingency fees are never liquidated because the amount is never fixed until it is approved by the court; otherwise, a client will never be able to exercise the right to have the fee reviewed by the court. Moreover, Botwin points out that amounts sought vacillated both before the lawsuit was filed and during trial. Botwin stresses that the fee ultimately awarded by the trial court here was less than the amount requested by Miller. Therefore, Botwin reasons, the award was based on quantum meruit. A judgment based on quantum meruit does not draw prejudgment interest because the amount due is not liquidated until the trial court's determination of the amount. See *Marcotte Realty & Auction, Inc. v. Schumacher*, 229 Kan. 252, 268, 624 P.2d 420 (1981).

Miller reasons that the fees here were liquidated because the amounts due and the due dates were easily calculated and ascertainable from the contract. He also argues that the fact a contingency fee is subject to review by the court does not make the fee unliquidated. Alternatively, Miller argues that prejudgment interest was proper here even if this court determines that the fees were unliquidated. In *Lightcap v. Mobil Oil Corporation*, 221 Kan. 448, Syl. ¶ 11, 562 P.2d 1, *cert. denied* 434 U.S. 876 (1977), this court indicated that interest may be allowable on unliquidated damages where necessary to arrive at full compensation. Miller reasons that Botwin has had the use of the money and that Miller has been deprived of the money; therefore, prejudgment interest is necessary to provide full compensation.

Botwin is correct in pointing out that MRPC 1.5(e) gives the trial court the authority to determine the reasonableness of the fee contract and to set a reasonable fee. However, that authority does not make the fees under the contract unliquidated. If the contract is clear as to the method of fee calculation and as to the date the fees are due, the fees under the contract are liquidated. Moreover, MRPC 1.5(e) gives the trial court the authority to review and approve *all* fee contracts, not just contingency fee contracts. According to Botwin's argument, then, no claim for attorney fees would be liquidated, and thereby subject to prejudgment interest, until it is approved by the court. This construction is not reasonable.

Botwin also points out the fees awarded by the trial court were less than those sought by Miller. Although the contract called for fees of 50% for refunds obtained at the local level, the trial court awarded somewhat less than that percentage for such refunds. Moreover, although the contract called for fees of 70% for refunds obtained through BOTA or the district court, the trial court here awarded only 50% fees for such refunds. However, contrary to Botwin's argument, the trial court did not award fees based on quantum meruit. There was no testimony concerning the reasonable value of Miller's work based on an hourly or some other rate. The trial court did not indicate how it reached its decision that $59,675.53 for local savings was reasonable. It did indicate that it awarded only 50% fees for the $11,047.31 refund "in the interest

of equity." The trial court obviously felt that 50% was reasonable for all tax savings obtained but it awarded less than 50% on the savings obtained at the local level because that was the amount prayed for in the petition.

Ultimately, the award of prejudgment interest is a matter which lies within the sound discretion of the trial court. The contingency fees owed here are ascertainable based on the terms of the agreement, even though the award by the trial court did not correspond precisely with the terms of the agreement due primarily to Miller's pleading error.

Miller was deprived of the use of this money when Botwin failed to timely settle his fees. Because an award of prejudgment interest lies within the trial court's discretion, and based on the unique facts of this case, we affirm the award of prejudgment interest.

Miller takes issue, however, with the dates from which the trial court ordered prejudgment interest. Prejudgment interest on the $59,675.53 was from January 1, 1992, and prejudgment interest on the $5,523 was from January 1, 1993. These dates do not correspond to the dates ascertainable from the contingency fee contract. The agreement provided for payment of one-half of the fees at the time the property value was reduced and for the remaining one-half of the fees upon receipt of the 1989 tax bill. We note that some of the tax reductions were not received until after the 1989 tax bill was received. We remand the awards of prejudgment interest to the trial court for recomputation of the dates from which prejudgment interest should accrue according to the terms of paragraph 3 of the contingency fee agreement.

## V. MOTION FOR A CONTINUANCE

The granting or denial of a motion for continuance is a matter which lies within the sound discretion of the trial court, and the trial court's ruling will not be disturbed on appeal absent an abuse of discretion. *Wilson v. American Fidelity Ins. Co.*, 229 Kan. 416, 422, 625 P.2d 1117 (1981).

Botwin argues that the trial court's denial of his motion was an abuse of discretion. He points out that a continuance was necessary due to circumstances beyond his control when his attorney

spent the day before trial giving a deposition in an unrelated matter though they had scheduled that day for final trial preparation. Botwin reasons that the effectiveness of his defense was diminished because his vision problems hindered his ability to read or refer to documents as a witness.

Botwin's argument is without merit. After taking evidence during the morning of the first day of trial, the trial was continued for three days because the court had other matters scheduled. Botwin did not testify until the second day of trial, three days after he sought the continuance. This allowed ample preparation time. Moreover, the cross-examination of Miller was not conducted until the second day of trial, so if Botwin had vision problems during Miller's testimony, he had ample time with his attorney to prepare for the cross-examination. The trial court did not abuse its discretion in denying the continuance.

Affirmed in part, reversed in part, and remanded with directions.