**L.J. STAFFORD, a/k/a Jay Stafford, Plaintiff,**

**v.**

**Carol Jane CRANE, Trustee of the L.J. Stafford Irrevocable Trust, Defendant.**

**No. CIV.A. 01–2536–KHV.**

United States District Court, D. Kansas.

Dec. 30, 2002.

Thomas R. Hill, William G. Wright, Hill, Beam-Ward & Kruse, LLC, Overland, Park, KS, for plaintiff.

Anne W. Schiavone, Husch & Eppenberger, Kansas City, MO, for defendant.

## MEMORANDUM ORDER

VRATIL, District Judge.

L.J. Stafford brings suit against Carol Jane Crane, the former trustee of an irrevocable trust established in his name, seeking a declaration that the trust is void *ab initio*. Plaintiff also seeks reimbursement for trust funds which defendant misappropriated.[1] The parties tried the case to the Court on July 25, 2002. Having considered the evidence, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure.

### Findings Of Fact

Plaintiff, an elderly gentleman, is a longtime resident of Keyes, Oklahoma. He has four sisters, Billie Jo Stafford, Juanita Jankowski, Mimi Halter and Priscilla Benson, and a brother, Van Stafford. He also has two nieces, Carol Jane Crane and Barbara Ann Hinds. Crane resides in Springfield, Colorado.

On or about March 18, 1992, plaintiff's four sisters published and filed of record in Cimarron County, Oklahoma (the county in which the city of Keyes is located) a declaration and notice that plaintiff was incompetent. The declaration and notice purported to be a "FIRST CLAIM AND INTEREST of all real property now owned by [plaintiff] and [his wife]." *Declaration And Notice Of Incompetency,* Exhibit A in Plaintiff's Exhibit 19. Additionally, it purported to be a "BAR and INJUNCTION against any person ... attempting to induce [plaintiff] into any business transaction." *Id.* Plaintiff sued his four sisters to quiet title regarding his real property, and on or about June 1, 1996, the District Court of the First Judicial District in Cimarron County issued a permanent injunction which prohibited the sisters from "further conduct, personally or through any agent or attorney which would or might interfere with plaintiff's ability or perceived legal capacity to conduct his business, personal, and agricultural pursuits." Exhibit B in Plaintiff's Exhibit 19.

Some three years later, on or about September 17, 1999, plaintiff executed a durable power of attorney which appointed two sisters, Billie Jo Stafford and Juanita Jankowski, as his lawful attorneys in fact. Six months later, on or about April 6, 2000, plaintiff executed a durable power of attorney for health care decisions, appointing Billie Jo Stafford as his agent. The following day, Billie Jo Stafford used her durable medical power of attorney to admit plaintiff to the Morton County Geriatric Hospital and Psychiatric Center in Elkhart, Kansas. Two weeks later, she transferred plaintiff to a locked-down Alzheimer

---

1. Although plaintiff argues that the trust is void *ab initio,* he does not seek compensation for all expenditures which defendant made. Plaintiff acknowledges that he would have made some of these expenditures on his own behalf and that it would be unjust to require restitution for such expenditures.

unit at the Southeast Colorado Hospital and Long Term Care Center in Springfield, Colorado. That same day, she also executed a document titled "L.J. Stafford Irrevocable Trust" ("Irrevocable Trust"). The Irrevocable Trust purports to be an agreement between plaintiff as settlor and his niece, Barbara Ann Hinds, as trustee. Billie Jo Stafford executed the Irrevocable Trust in Kansas, and it states that it shall be governed and construed under Kansas law. The Irrevocable Trust names Crane as successor trustee if Hinds ceased to serve as trustee. Almost immediately after she assumed the position of trustee, Hinds did cease to serve and Crane took over. Crane acted as trustee until May 9, 2002 when the parties agreed that the Irrevocable Trust was null and void.

The Irrevocable Trust included plaintiff's real estate in Cimarron County, Oklahoma and Baca County, Colorado, which had an approximate total value of $3,000,000. The trust also included certificates of deposit at the First National Bank of Elkhart, Kansas (with an approximate value of $378,000) and the First National Bank of Keyes, Oklahoma (with an approximate value of $600,000).

Plaintiff was in the Alzheimer's unit from April until September of 2000. While he was there, sisters Billie Jo Stafford and Priscilla Benson and brother Van Stafford filed a petition in the District Court in Baca County, Colorado, asking the court to appoint Crane as plaintiff's guardian and conservator. Around the same time,[2] plaintiff sought release from the Alzheimer's unit by filing a habeas corpus petition against his family members and the Southeast County Hospital in the Baca County District Court. The court consolidated plaintiff's habeas corpus petition with the guardianship action and appointed psychiatrist Donald A. Johnston, M.D., to perform an independent evaluation of plaintiff. Dr. Johnston found plaintiff to be oriented, intelligent, capable of giving a good history, and not depressed or in need of sedating tranquilizers. On August 8, 2000, on Dr. Johnston's recommendation, the court ordered that plaintiff's medications be gradually reduced and discontinued. On September 12, 2000, it also ordered that plaintiff be released from the Alzheimer's unit and moved to either a nursing home or home health care because even though he was competent, he had physical infirmities and could not properly care for himself. The court appointed Crane as temporary guardian but allowed plaintiff to nominate an acceptable replacement guardian.[3]

While Crane was trustee, she made numerous disbursements from the Irrevocable Trust. Plaintiff challenges the validity of the Irrevocable Trust *ab initio*. In the alternative, if the Irrevocable Trust is valid, plaintiff challenges some of Crane's disbursements. If the trust is declared void *ab initio*, plaintiff agrees that he should not be reimbursed for every disbursement; he only seeks to recover those disbursements which he would not have made had he been in control of his finances. Specifically, plaintiff contests the following transactions:[4]

| Date | *Bank* | Check No. | Amount | Payee | For |
|------|--------|-----------|--------|-------|-----|

2. The record does not specify dates.

3. Plaintiff's testimony indicates that he nominated his nephew Eddie Stafford.

4. At trial, plaintiff argued that he should be reimbursed $8,844.00 in Social Security monies which went into the trust account instead of his personal account. Plaintiff acknowledges, however, that those funds were ultimately transferred into his personal account.

**The First State Bank, Keyes, OK**

| Date | Check No. | Amount | Payee | Description |
|---|---|---|---|---|
| 6/20/00 | 1001 | $ 3,500.00 | George McLachlan, Attorney | Attorney fees of Van Stafford, Priscilla Benson, Billie Jo Stafford & Carol Crane regarding guardianship/conservatorship action. |
| 6/21/00 | 1002 | $ 1,250.00 | Loren Brown, Attorney | Advice concerning how to set up trust to benefit plaintiff |
| 7/3/00 | 1005 | $ 3,695.98 | SEC Hospital— Alzheimer's unit | Care for plaintiff |
| 7/10/00 | 1007 | $ 406.17 | Pierce, Couch Law Firm | Consultation regarding set up of trust |
| 7/10/00 | 1008 | $ 1,798.41 | Jones & Keller Law Firm | Attorney fees for Hinds regarding trust creation & validity |
| 7/10/00 | 1014 | $ 231.00 | David Petty Law Office | Consultation regarding drafting plaintiff's will |
| 7/10/00 | 1017 | $ 5,561.36 | Priscilla Benson | Reimbursement for attorney fees of Brad Ambrosner |
| 7/31/00 | 1025 | $ 3,695.98 | SEC Hospital— Alzheimer's unit | Care for plaintiff |
| 8/10/00 | 1029 | $ 1,648.14 | Barbara Hinds | Reimbursement for milage & time spent traveling to hospital to visit with staff regarding plaintiff's treatment & care |
| 8/18/00 | 1031 | $ 144.00 | SEC Hospital— Medical Records | Request of defendant's counsel |
| 8/27/00 | 1032 | $ 200.00 | Cash | Given to Alzheimer's unit |
| 9/5/00 | 1033 | $ 3,576.75 | SEC Hospital— Alzheimer's unit | Care for plaintiff |
| 9/5/00 | 1034 | $ 90.00 | Baca County District Court | Register trust |
| 9/18/00 | 1039 | $ 2,790.00 | Cimarron Memorial Hospital | Care for plaintiff |
| 4/20/00 | 7624 | $ 5,188.23 | SEC Hospital— Alzheimer's unit | Care for plaintiff |
| 5/31/00 | 7627 | $ 3,576.75 | SEC Hospital— Alzheimer's unit | Care for plaintiff |
| 6/1/00 | 7629 | $ 250.00 | Loren Brown, Attorney | Advice concerning how to set up trust to benefit plaintiff |
| 9/8/00 | Refund | -$ 421.75 | SEC Hospital | Refund |

**Colorado East Bank & Trust**

| Date | Check No. | Amount | Payee | Description |
|---|---|---|---|---|
| 2/7/02 | n/a | $ 36.99 | Bank | Check printing fees |
| 2/4/02 | 1001 | $ 6,458.58 | Jones & Keller Law Firm | Attorney fees for defendant regarding trust dispute |

| Date | Check No. | | Amount | Payee | Purpose |
|------|-----------|---|--------|-------|---------|
| 2/5/02 | 1002 | $ | 24.75 | Baca County District Court | Copying & faxing accounting to aid in winding up trust |
| 2/12/02 | 1003 | $ | 15.46 | Postmaster | Mail accounting to plaintiff |
| 3/18/02 | 1005 | $ | 14.20 | Postmaster | Mail accounting to plaintiff |
| 4/1/02 | 1006 | $ | 377.50 | George McLachlan, Attorney | Fees for defendant for assistance in preparing accounting |
| 4/1/02 | 1007 | $ | 1,000.00 | Richard Conforth | Consultation with defendant regarding winding up trust |
| 4/2/02 | 1008 | $ | 705.00 | Robert Schemahorn, Jr. | Consultation with defendant regarding accounting of trust |
| 4/5/02 | 1009 | $ | 33.67 | Gobin's | Copies of trust accounting information |
| 4/5/02 | 1010 | $ | 19.15 | Postmaster | Mail accounting to plaintiff |
| | Misc. | $ | 148.59 | Interest income lost | Defendant withdrew $50,000 (check No. 1004) from the account on 3/4/02 and redeposited it on 4/23/02. |
| ***First Nat'l Bank Elkhart, KS*** | | | | | |
| 2/6/02 | n/a | $ | 4,952.19 | Bank | Early withdrawal penalties (CDs) |
| | Total | | $50,967.10 | | |

On April 24, 2002, the parties filed a joint motion and stipulation for an order declaring the Irrevocable Trust null and void as of that date; the Court adopted the stipulation on May 9, 2002. (Doc. # 44).

### *Conclusions Of Law*

■ The first question is whether the Irrevocable Trust was void from its inception on April 20, 2000 or merely from the time when the Court adopted the parties' stipulation on May 9, 2002. *See Order Declaring Trust Void* (Doc. # 44) filed May 9, 2002. Plaintiff asserts that the Irrevocable Trust is void *ab initio* because Billie Jo Stafford acted *ultra vires* in transferring his property to the purported trust. Crane claims that this claim is barred because plaintiff's counsel signed the parties' stipulation of April 24, 2002 and the stipulation did not specifically preserve plaintiff's argument that the Irrevocable Trust was void *ab initio*. *See Post Trial Brief* (Doc. # 52) filed August 5, 2002. The Court disagrees. The stipulated order declares that the Irrevocable Trust is null and void as of May 9, 2001, but it does not address plaintiff's claim that the trust was void from its inception. *See Wheeler v. John Deere Co.,* 935 F.2d 1090, 1097 (10th Cir.1991) (waiver implies that party voluntarily and intentionally renounced or gave up known right). Indeed, the stipulated order reiterates plaintiff's denouncement of the purported Irrevocable Trust from its inception, *Order Declaring Trust Void* (Doc. # 44) ¶ 4 ("Plaintiff has denounced the purported L.J. Stafford Irrevocable Trust since its execution."), and instructs the parties to cooperate in the return of trust assets. The Court specifically retained jurisdiction to determine plaintiff's damages from Crane's misappropriation of the "purported" trust's assets. *Id.* ¶ 9. Its jurisdiction necessarily embraces the issue whether the trust was void *ab initio. See United States v. Powell,* 307 F.2d 821, 824 (10th Cir.1962) (court

has full power to correct any abuses of trust).

■ In Kansas the elements necessary to create an express trust are: "(1) an explicit declaration and intent to create a trust; (2) the transfer of lawful and definite property made by a person capable of making transfer thereof; and (3) a requirement to hold the property as trustee for the benefit of the *cestue que trust* with directions as to the manner in which the trust funds are to be applied." *Taliaferro v. Taliaferro,* 260 Kan. 573, 921 P.2d 803, 808 (1996) (quotations and citations omitted). Generally, a written trust instrument satisfies the first requirement (an explicit declaration and intent to create a trust) and the intention of the settlor, expressed in the language of the trust instrument, controls trust interpretation. *See In re Saroff,* 229 Kan. 446, 452, 625 P.2d 458, 463 (1981); *In re Sutcliffe,* 199 Kan. 686, 691, 433 P.2d 389, 394 (1967). Here, however, the purported settlor—plaintiff—did not create the trust. Billie Jo Stafford executed the purported trust document by signing her name to a purported trust instrument above a signature line that reads "L.J. Stafford, by Billy Jo Stafford, his attorney in fact." [5] Plaintiff's Exhibit 19. Without an explicit declaration and intent by plaintiff to give Billie Jo Stafford power and authority to create a trust on his behalf, the first element necessary to trust creation is missing. The Court must therefore decide whether an attorney in fact, appointed in a durable power of attorney, had the requisite power of disposition over plaintiff's property.

■ "A power of attorney is an instrument in writing by which one person, as principal, appoints another as agent and confers upon such agent the authority to act in the place of the principal for the purposes set forth in the instrument." *Geren v. Geren,* 29 Kan.App.2d 565, 570, 29 P.3d 448, 452 (2001) (quotations and citations omitted). [6] Plaintiff's durable power of attorney, executed in Cimarron County, Oklahoma, authorized his attorneys in fact, Billie Jo Stafford and Juanita Jankowski, to:

> ask, demand, sue for, collect and receive all sums of money, dividends ... and all property now due ... and owing to me, and give good and valid receipts and discharges for such payments; to sell, assign and transfer stocks and bonds and securities ... to buy and sell securities of all kinds ... to borrow money and to pledge securities ... to vote at all meetings of any corporation ... and otherwise to act as my representative in respect to any shares ... to manage real property, to sell, convey and mortgage realty, to foreclose mortgages and to take title to property in my name, and to execute, acknowledge and deliver deeds of real property, mortgages, releases, satisfactions and other instruments relating to realty ... to sign in my name checks on all accounts ... to withdraw funds from said accounts ... to make payments and expenditures ... to retain counsel and attorneys on my behalf ... and authority to do and perform all and every act and thing whatsoever necessary to be done in the promises, as fully to all intents and purposes as I might or could do if personally present ...

Plaintiff's Exhibit 15. This durable power of attorney is broad, but it does not specifically refer to powers or authority with

---

**5.** A handwritten notation indicates that "Billy" is misspelled, and that the signature spelling is correct.

**6.** A durable power of attorney remains in effect during the grantor's incompetency. *Geren,* 29 Kan.App.2d at 570, 29 P.3d at 452.

respect to the creation, amendment or revocation of trusts.[7] A power of attorney grants only those powers specified in the written instrument and will be strictly construed in ascertaining the intent of the principal. *See Muller v. Bank of Am.,* 28 Kan.App.2d 136, 139, 12 P.3d 899, 902 (2000).

The law imposes few restrictions on acts that may be performed by attorneys in fact. Generally, restrictions relate to the delegation of personal powers such as "making or revoking a will, funding a trust, changing beneficiaries on an insurance policy, taking a marriage vow or an oath, voting, performing under a personal service contract, and performing fiduciary responsibilities." Carolyn L. Dessin, *Acting As Agent Under a Financial Durable Power of Attorney: An Unscripted Role,* 75 Neb. L.Rev. 574, 582 n. 38 (1996) (citations omitted). The power to create a trust is generally non-delegable, *see* Paul L. Sturgul, *Financial Durable Powers of Attorney: A Primer* 41 No. 5 Prac. Law. 21, 29–30 (July 1995), but neither Kansas law, which controls the trust, nor Oklahoma law, which controls the durable power of attorney, specifically address whether an attorney in fact may create an irrevocable trust without express language which grants such authority in the durable power

of attorney itself.[8] Few states have statutorily addressed this question.[9] At least one court has held that a durable power of attorney which grants the power to manage and sell real and personal property to maintain and care for the principal does not authorize the agent to create an irrevocable trust. *See Kotsch v. Kotsch,* 608 So.2d 879, 880 (Fla.Dist.Ct.App.1992). In *Kotsch,* the court reasoned that a durable power of attorney grants only those powers specified therein and is closely examined to ascertain the intent of the principal. *See id.* This Court agrees and finds that while plaintiff's power of attorney granted Billie Jo Stafford many powers, including the power to manage and sell real and personal property, it did not authorize her to create an irrevocable trust on plaintiff's behalf. In Kansas, a power of attorney is strictly construed and must be closely examined to ascertain the intent of the principal. *See Muller,* 28 Kan. App.2d 136, 12 P.3d 899.

The durable power of attorney which plaintiff executed on September 17, 1999 did not specifically authorize Billie Jo Stafford, as attorney in fact, to create a trust on plaintiff's behalf. Therefore the first requirement of a valid trust—an explicit declaration and intention to create a

7. At trial plaintiff testified that he had been incapacitated by his sisters, the appointed attorneys in fact, and that he did not recall executing the durable power of attorney. Plaintiff does not contest the validity of the power of attorney, however, and that issue is not before the Court.

8. Both Kansas and Oklahoma have adopted the Uniform Durable Powers of Attorney Act. *See* K.S.A. § 58–610 *et seq.* (1994); 63 Okl. St. T. §§ 1071 to 1077 (1995).

9. *See* Fla. Stat. § 709.08(7)(b)(5) ("an attorney in fact may not .... [c]reate, amend, modify, or revoke any document or other disposition effective at the principal's death or transfer assets to an existing trust created by

the principal unless expressly authorized by the power of attorney ..."); Cal. Prob.Code § 4264 (agent under durable power of attorney may create, modify, or revoke trust if expressly authorized to do so in the power of attorney); Ind.Code § 35–5–5–15 (agent may exercise all powers with respect to estates and trusts that principal can exercise, but may not make or change will); Ind. Trust Code § 30–4–3–1(d) (unless terms of trust provide otherwise, power of revocation or modification may only be exercised by settlor personally); Wash. Rev.Code § 11.94.050 (power of attorney may authorize agent to make, alter or amend trusts, but may not allow agent to make, amend or revoke will or codicil).

trust—is not satisfied, and Billie Jo Stafford had no legal authority to transfer plaintiff's property to an irrevocable trust. Her disposition of the property was therefore unauthorized, and the purported trust is void *ab initio. See Kotsch, supra.* Crane, as successor trustee, had no authority to exercise any control over plaintiff's assets and all expenditures which she made were misappropriations. Plaintiff is entitled to recover all disbursements except those which he concedes he would have incurred in any event.

■■■■■ Plaintiff requests prejudgment interest for Crane's misappropriations. A federal court sitting in diversity applies state law regarding the issue of prejudgment interest. *See Chesapeake Operating, Inc. v. Valence Operating Co.,* 193 F.3d 1153, 1156 (10th Cir.1999). Under Kansas law, the Court may allow prejudgment interest on liquidated claims at the rate of ten per cent per annum, when no other rate of interest is agreed upon. *See* K.S.A. § 16–201; *Miller v. Botwin,* 258 Kan. 108, 119, 899 P.2d 1004, 1011–12 (1995). "A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same becomes definitely ascertainable by mathematical computation." *Id.* at 119, 899 P.2d at 1012. To adequately compensate plaintiff for the misappropriation of his assets, an award of prejudgment interest is appropriate. The amount of plaintiff's damages was liquidated on the date of each misappropriation. The Court therefore orders the parties, no later than January 6, 2003, to submit an agreed accounting of the amount of prejudgment interest which is due through January 15, 2003, when the Court proposes to enter final judgment in this case.

**IT IS THEREFORE ORDERED** that the L.J. Stafford Irrevocable Trust dated April 20, 2000 be and hereby is declared void *ab initio.*

**IT IS FURTHER ORDERED** that on or before January 6, 2003, the parties submit an agreed accounting of the prejudgment interest which is due through January 15, 2003.

**IT IS FURTHER ORDERED** that upon receipt of that accounting, the Clerk enter judgment in favor of plaintiff L.J. Stafford and against defendant Carol Jane Crane in the amount of $50,967.10 plus prejudgment interest.